Robert Lee GILL, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 62833.

Court of Criminal Appeals of Texas,
Panel No. 2.

May 28, 1980.

On Rehearing Dec. 23, 1981.

David B. Ziegler, Houston (Court-appointed), for appellant.

John B. Holmes, Jr., Dist. Atty., Clyde F. DeWitt, III, Rusty Hardin and James England, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

## OPINION

ROBERTS, Judge.

This appeal presents a question about the propriety of officers' breaking into the locked trunk of an automobile after finding a small quantity of suspected contraband in the passenger compartment. The appellant moved to suppress the fruit of such a search, and the trial court overruled his motion. We agree that that was error. We shall reverse the judgment, which was based on verdicts of a jury that found the appellant guilty of possessing hydromorphone and that assessed a punishment of 5 years' confinement and a $5,000 fine.

The events which preceded the search of the trunk may be stated briefly, for the case does not turn on the propriety of those events.[1] A police officer saw the appellant sitting alone in a parked car, holding a syringe. The officer spoke to the appellant, made a radio call for assistance, and asked the appellant for identification. The appellant produced an evidently altered driver's license. The appellant tried to get back into the car, but the officers restrained him and searched the interior of the car. They seized (besides the appellant) an altered driver's license, a syringe which contained a liquid that was not identified, a marihuana cigarette, a towel, a bottle of rubbing alcohol, a spoon, some cotton, and a briefcase which contained various papers. None of these items was the basis of the conviction now before us. We shall assume (without deciding) that the officers acted properly in making those seizures, and we turn to the crucial search of the trunk.

1. They are described in detail in the concurring opinion.

The officers asked the appellant for a key to the trunk, but he did not provide one. The officers called a wrecker. (The police department had no wrecker or automobile pound; it got those services from private businesses.) They asked the wrecker driver to remove the back seat of the car so that they could search the trunk. There they found a bottle of hydromorphone tablets which were the basis of this prosecution.

■ Automobiles are "effects" (U.S. Constitution, Amendment IV) and "possessions" (Texas Constitution, Article 1, Section 9) in which the people have a right to be secure against unreasonable searches and seizures. *E.g., Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Odenthal v. State*, 106 Tex.Cr.R. 1, 290 S.W. 743 (1927). The requirement of a search warrant may be excused in the case of a moving automobile. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). "*Carroll* has been followed in a line of subsequent cases, but the *Carroll* doctrine does not declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search." *Almeida-Sanchez v. United States*, 413 U.S. 266, 269, 93 S.Ct. 2535, 2537–2538, 37 L.Ed.2d 596 (1973) (footnotes omitted).

The issue of probable cause for the search of the trunk comprises two questions: Does the existence of probable cause to search the interior of the car necessarily mean that there was probable cause to search the trunk? If not, was there nonetheless probable cause to search the trunk? The answer to both questions is, No.

"[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. *Kremen v. United States*, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 356–358, 51 S.Ct. 153, 157–158, 75 L.Ed. 374 (1931); see *United States v. Di Re*, 332 U.S. 581, 586–587, 68 S.Ct. 222, 224–225, 92 L.Ed. 210 (1948). The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, [18 L.Ed.2d 782] (1967) (Mr. Justice Fortas, concurring); see, e.g., *Preston v. United States*, 376 U.S. 364, 367–368, 84 S.Ct. 881, 884, 11 L.Ed.2d 777 (1964); *Agnello v. United States*, 269 U.S. 20, 30–31, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925)." *Terry v. Ohio*, 392 U.S. 1, 18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). For example, if officers have probable cause to search a vehicle for evidence (such as identification numbers) that it was stolen, their search becomes improper when they begin to rip up the floorboards. *Maldonado v. State*, 528 S.W.2d 234, 241 (Tex.Cr.App.1975). Probable cause that was sufficient for the former search did not justify the latter. It is the later search of the trunk which must concern us.

■ Probable cause to search part of a vehicle is not inevitably probable cause to search the entire vehicle. *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975); W. LaFave, 2 Search & Seizure section 7.2(d) (1978). The reason is that the search and seizure amendments of our constitutions protect people's rights to privacy, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and there are different expectations of privacy in different parts of an automobile. In the exterior of an automobile there is no reasonable expectation of privacy. *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion). In the interior of an automobile there is an expectation of privacy which is somewhat lower than the expectation of privacy in a home or office, "because [an automobile's] function is transportation and it seldom serves as one's residence or as the repository of personal effects. ... It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis*, supra, at 590, 94 S.Ct. at 2469, quoted in *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977), and in *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976).

In the trunk of an automobile there is a still greater expectation of privacy. Unlike the exterior or the interior of an automobile, the trunk is not in plain view. It does serve as the repository of personal effects. It is not normally involved in the "pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements" which apply to automobiles; *South Dakota v. Opperman,* supra, at 368, 96 S.Ct. at 3096. One indication of the different expectation of privacy in the trunk of an automobile is the fact, which is common knowledge, that the trunks of most automobiles have a lock and key different from the lock and key of the interior; access to one may be given separately from access to the other. The Supreme Court has recognized that the operator of an automobile has a different expectation of privacy in the trunk of the automobile than mere passengers have in the interior. *Rakas v. Illinois,* 439 U.S. 128, 148–149, 99 S.Ct. 421, 433–434, 58 L.Ed.2d 387 (1978).[2]

Therefore we hold that the scope of an automobile search, like any other search, must be strictly tied to and justified by the circumstances occasioning it. The existence of probable cause to search the interior of an automobile is not necessarily sufficient to justify the search of the trunk. A search based on probable cause which reasonably tends to support only the inference that contraband or evidence will be found in the passenger compartment is of intolerable intensity and scope if it is expanded to include a closed trunk. Such an expansion must be justified by specific, articulable facts that give probable cause to believe that contraband or evidence is concealed in the trunk. *Wimberly v. Superior Court,* 16 Cal.3d 557, 547 P.2d 417, 128 Cal. Rptr. 641 (1976). *Accord, State v. Patino,* 163 N.J.Super. 116, 394 A.2d 365 (App.Div. 1978); *Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113 (1980). *See Commonwealth v. White,* 371 N.E.2d 777 (Mass.

1977), *aff'd,* 439 U.S. 280, 99 S.Ct. 712, 58 L.Ed.2d 519 (1978).

This holding comports with the traditional "automobile exception" cases such as *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925), and *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In those cases the searching officers had probable cause to believe that contraband or evidence would be concealed throughout the car. (This is often, but not always, the case. W. LaFave, 2 Search & Seizure section 7.2(d) (1978).) *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), is not contrary to our holding; the officers there had probable cause to believe that the gun which they were seeking was in the trunk. The same may be said of such cases as *Borner v. State,* 521 S.W.2d 852 (Tex.Cr. App.1975), where the strong odor of marihuana coming from the back part of the car gave the officers probable cause to believe that there was marihuana in the trunk.

Recognizing that probable cause to search the interior is not necessarily sufficient to justify a search of the trunk, we turn to the question of whether there was probable cause to search the trunk. Putting the worst construction on the facts known to the officers in this case, a reasonable person could have concluded that the appellant was in possession of an altered driver's license and a marihuana cigarette, and that he was about to "shoot up" with illegally possessed drugs. These facts do not establish probable cause to believe that contraband or evidence was in the trunk. The finding of a small quantity of suspected contraband in the passenger compartment of an automobile does not alone amount to probable cause to search the trunk. *Wimberly v. Superior Court,* 16 Cal.2d 557, 547 P.2d 417, 128 Cal.Rptr. 641 (1976); *People v. Gregg,* 43 Cal.App.3d 137, 117 Cal.Rptr. 496 (1974); *State v. Patino,* 163 N.J.Super. 116, 394 A.2d 365 (App.Div.

2. "[The petitioners] made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers.

*Like the trunk of an automobile,* these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." (Emphasis supplied.)

1978); *State v. Murray*, 151 N.J.Super. 300, 376 A.2d 1255 (App.Div.1977); *State v. Astalos*, 160 N.J.Super. 407, 309 A.2d 144 (Law Div.1978); *Commonwealth v. Long*, 489 Pa. 369, 414 A.2d 113 (1980). The search of the trunk was unreasonable; it violated the Fourth Amendment of the United States Constitution and Article 1, Section 9, of the Texas Constitution.

It was error to admit evidence obtained by the search of the trunk.

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. * * * "

V.A.C.C.P., Art. 38.23.

■■■ The record in this case leaves one with the impression that the officer assumed a right to search the entire automobile as an incident to the arrest of the appellant. The Supreme Court has explained at length that an arrest does not alone justify the search of the arrestee's automobile. See part II–D of *Coolidge v. New Hampshire*, 403 U.S. 443, 473–484, 91 S.Ct. 2022, 2042–2047, 29 L.Ed.2d 564 (1971). While it is disappointing that the officer did not follow the correct rule, it is truly remarkable that the State does not recognize it either. In its brief the State argues that the search of the entire automobile was proper as an incident to the arrest. To support this proposition it audaciously cites "*Carroll v. United States*, 267 U.S. [132] at 158, 45 S.Ct. [280] at 287, 69 L.Ed. 543 [ (1925) ]." Turning to the cited page we find, of course, exactly the opposite proposition: "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U.S. at 158–159, 45 S.Ct. at 287.

■■■ The State also suggests offhandedly, "In any event, an inventory of the vehicle was justified under the circumstances." But there was no proof that an inventory of

the car was in fact conducted. The burden is on the State to prove a proper inventory. Also, it is far from clear that an inventory of a locked trunk would be proper. See *South Dakota v. Opperman*, 428 U.S. 364, 376 nn. 6 & 7, 96 S.Ct. 3092, 3101, 3102 nn. 6 & 7, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring) (trunk was not searched).

The search of the trunk was illegal, and the evidence seized should have been suppressed.

The judgment is reversed and the cause is remanded.

CLINTON, Judge, concurring.

A close examination and analysis of the facts against applicable law convinces me that the arrest of appellant and the protective sweep of the frontal interior of the automobile, particularly its front seat, are sustainable. Yet I must agree with the majority opinion that the critical issue still is whether what preceded it gave rise to probable cause for forcible entry into the trunk. The scenario is now considered as it was played.

First, the facts: When the presence of uniformed Officer Lawrence was noticed by appellant, the latter was seated in his parked car in front of a convenience store that was open for business. Thus, Officer Lawrence did not stop the movement of his car. Rather, Officer Lawrence pulled up and parked his own personal vehicle in a parking space alongside. Therefore, and the point to be made is that, we are not presented with a forcible stop of a motor vehicle by a peace officer. Nor is there the slightest whisper of a hint from Officer Lawrence in testifying or from the State in arguing its position that before getting out of his own vehicle the officer had any basis whatsoever to differentiate the observed activity of appellant from that of any other citizen who innocently drives to and parks his car in front of an open convenience store, and momentarily sits there in it.

Still without that hint, Officer Lawrence lights from his own vehicle and, as he walks toward or by him, sees appellant still seat-

ed, holding a syringe in one hand, and noticed on the front seat a bottle of alcohol, a towel and some tissues like Kleenex. Appellant then detects the presence and, presumably the gaze, of a uniformed police officer; he reacts to what he has seen by a somewhat understandable physical manifestation of surprise and by the not so appreciatory thrusting of the syringe in his hand under a towel in the front seat of his car. Officer Lawrence, by then next to the passenger side, motioned for appellant to roll down that window and asked appellant if his car were broken down or if he were lost; appellant replied that he was looking for the Astrodome. Quickly assaying the situation, Officer Lawrence radioes for assist-

ance as he is walking around the rear of the car in which appellant remains seated. Appellant, apparently also evaluating his own position, voluntarily exits his own car.[1] Now near him, Officer Lawrence initiates an innocuous conversation.[2]

Leaving the door open as he got out of his car, appellant exposed to view on its front seat a white towel, a canvas bag, a box of tissues, some loose tissues, a bottle of alcohol and a briefcase. Officer Lawrence now requests appellant to show some identification.[3] (The officer testified that at this point and until appellant tried to reenter his automobile appellant was free to leave had he chosen to do so.) Appellant complies.[4]

1. At this juncture, appellant has neither been detained nor directed to do something by Officer Lawrence. Proscriptions that create the protections of the Fourth Amendment of the United States Constitution and of Article 1, Section 9 of the Bill of Rights in the Texas Constitution, therefore, have not yet been offended.

2. "I was attempting to talk to him about directions to the Astrodome," recalled Officer Lawrence, conceding that he was stalling for time to permit the unit called for to arrive.

3. According to *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), "When the officers *detained* appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment." Of course that statement is made in factual context of that case: Brown and another man were seen by the officers walking in opposite directions away from each other in an alley; the patrol car was driven into the alley and one officer got out, stopped Brown and asked him to identify himself and explain what he was doing there; Brown refused and angrily asserted that the officers had no right to stop him; one remarked that Brown was in a "high drug problem area" and the other "frisked" Brown but found nothing. But, given the facts of the case before us, that the Supreme Court would consider this chanceful encounter between appellant and Officer Lawrence a "stop," merely because Officer Lawrence asked for identification and appellant complied, is most doubtful. The *Brown* opinion also uses a quotation from *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975) to explain that "whenever a police officer accosts an individual and *restrains his freedom to walk away*, he has 'seized' that person. . . ." It is not at all clear from our record that appellant

was restrained of his freedom to walk away from Officer Lawrence. Rather, the officer said appellant retained that freedom. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

4. Often overlooked by judges and other writers is the unassailable proposition that *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) specially declined to address "the constitutional propriety of an investigative 'seizure' upon less than probable cause for purposes of 'detention' and/or interrogation," *id.* at 19 n. 16, 88 S.Ct. at 1879; see *Dunaway v. New York*, 442 U.S. 200, n. 12, 99 S.Ct. 2248, n. 12, 60 L.Ed.2d 824 (1979) for confirmation. Indeed, as Mr. Justice White observed in his concurring opinion in *Terry*:

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, *such as those in this case*, it seems to me the person may be briefly detained *against his will* while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring.) Obviously, in *Brown v. Texas*, supra, the unanimous conclusion is that "special" and "proper" circumstances did not there obtain, and the Supreme Court decided in *Brown* what was specifically declined for determination in *Terry*: "But even assuming that [the] purpose [of prevention of crime] is served to some degree by *stopping* and *demanding* identification from an individual without any specific basis for

Second, the law and authorities cited by the dissent at this point in the factual situation are *not* applicable: *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1978), while reciting factually that one of the officers—they had stopped Mimms for committing a traffic offense—ordered Mimms out of his car and asked him to produce his owner's card and driver's license, did *not* hold that police officers could require a citizen he has ordered to get out of his car to produce a driver's license. Indeed, such a holding would conflict directly with *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) and, if a driver's license be equated with identification, *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). What *Mimms* held is that the *order* for a motorist who has been stopped for offending the traffic law *to get out of the vehicle* he is driving is constitutionally permissible. The State interest involved is the safety of the officer, and that interest is obviously not advanced by a request that the motorist produce his driver's license or that the pedestrian identify himself, just as the Supreme Court determined in *Brown v. Texas*, supra.

Nor was the request for display of a driver's license preceded by sufficient articulable circumstances to justify a *Terry* type maneuver for, as explicated by this Court in *Armstrong v. State*, 550 S.W.2d 25, 30–31 (Tex.Cr.App.1977, opinion on rehearing):

"... There must be reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. * * * * Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful."

It is not unlawful for a citizen to possess one of what must be thousands of syringes legally sold every day *unless* it "has on it any quantity (including a trace) of a controlled substance in Penalty Group 1 or 2 with intent to use it for administration of the controlled substance by subcutaneous injection in a human being," Article 4476–15, Sec. 4.07(a), V.A.C.S.[5] In these circumstances we are not prepared to say that simply seeing a citizen with a syringe in his hand and a movement by him to conceal it is enough to indicate his activity is related to crime, especially when the "furtive gesture" is at best "ambiguous conduct which the arresting officers themselves have provoked," *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963); see *Wilson v. State*, 511 S.W.2d 531, 533–535 (Tex.Cr.App.1974) and *Brown v. State*, 481 S.W.2d 106, 112 (Tex.Cr.App. 1972).

Third, to return to the facts as well as what I conceive to be the law applicable to them: Although he was not required by law to do so, in my view,[6] acceding to the request that he do so,[7] appellant produced a

believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it," *Brown*, supra, 99 S.Ct. at 2641.

**5.** Testifying on motion to suppress, Officer Lawrence candidly acknowledged that although he saw that the plunger of the syringe was "pulled back" he had no knowledge that there was contraband in it or on the needle. Indeed, at that point the officer just as frankly remarked, "I didn't have any reason to suspect anything was going on except—it even crossed my mind that he was possibly a diabetic."

**6.** The *obiter dictum* of Mr. Justice White in his concurring opinion in *Terry*, set out in note 4, *ante*, until authoritatively disapproved, is support enough for the proposition that a person on the streets—either pedestrian or occupant of a parked motor vehicle—may be approached and queried generally by a policeman so long as he is not detained or frisked, with the understanding that he may refuse to cooperate and go on his way, but the officer is not precluded from making continuing observations.

**7.** Officer Lawrence did not and the State may no longer claim that a stop and detention pursuant to Article 6687b, Sec. 13, V.A.C.S., for the purpose of determining whether a motor vehicle operator has a driver's license, is valid in light of *Delaware v. Prouse*, supra. Nor, under *Brown v. Texas*, supra, may the proscriptions of V.T.C.A. Penal Code, § 38.02 be affirmatively utilized to stop and detain a citizen in order to ascertain his identity. And, of course, Article 2.24, formerly in the Code of Criminal Procedure, authorizing the stop of a possible witness to an offense to demand production of

Michigan license that facially appeared to have been altered. Display of an altered license or of a license not issued to the person so displaying the same and driving without a valid license (unless exempt) are offenses under Article 6687b, Secs. 12 and 2(a), V.A.C.S., respectively. Having observed appellant behind the steering wheel alone in the car and viewing an altered driver's license, offenses were committed in the presence and within the view of Officer Lawrence. Article 14.01(b)[8] authorized him to arrest appellant and, pursuant to that arrest, make a search incident of his person and the area within his immediate control, e.g., *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). As they were positioned at the time, standing by the open car door near the towel that concealed at least the syringe, that area embraced the front seat. The protective sweep revealed additional paraphernalia but no controlled substance other than one marihuana cigarette.

What has been demonstrated here is that there is scripted by the law a basic scenario of interaction between a peace officer and the citizen that allows words and movements less intense than the "stop and frisk" street scene directed by *Terry v. Ohio*, supra, and its progeny. The fact situation commendably presented by the candid and forthright testimony of a careful and cautious policeman in this case is a showcase example. Thus, understandably curious from his observations, but not yet justifiably suspicious of criminal activity, the officer managed to deal with appellant on a conversational basis, without touching or restraining him, until an ostensibly complaint appellant presented the officer with documentary evidence of a penal offense.

The latter fortuity is, of course, not inevitable, but if criminal activity is indeed afoot the alert, resourceful officer may well detect enough indicia of it, through more conversation, casual inquiry and close observation, to convert mere curiosity into justifiable suspicion, if not eventually probable cause. Alas, here the indicia did not appear before the officer, perhaps because now joined by one of his peers, began to conduct a fruitless search of the remaining interior of the car and, after the wrecker arrived, forcibly entered and searched its otherwise secure trunk and contents. Like the majority opinion, I am unable to find probable cause for the search that produced the evidence on which appellant was convicted.[9]

Accordingly I concur in the judgment of the Court.

DOUGLAS, Judge, dissenting.

The court did not err in admitting the hydromorphone which had been found in the trunk of a car.

Officer J. R. Lawrence of the Hedwig Village Police Department testified that he first saw Gill upon entering the parking lot of a convenience store. Lawrence parked his car next to Gill's. Gill, at seeing a uniformed policeman, had a shocked look on his face and appeared very surprised and tried to hide whatever he had in his hand. Lawrence then noticed that Gill had a syringe in his hand which he tried to cover with a towel. Lawrence went to the back of Gill's car and radioed for help. Gill then got out of the car and left the door open. On the front seat of the car Lawrence saw a white towel, a canvas bag, a box of tissues, a number of loose tissues, a bottle of alcohol and a brief case.

identification from him, was repealed in favor of § 38.02, supra.

**8.** Article 14.01(b), V.A.C.C.P., provides: "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

**9.** The State would have it that probable cause to enter the trunk came from the officer's knowledge, in light of his nine years of experience, that the principal use of the discovered

and seized paraphernalia was to prepare drugs for injection. Yet, the officer had not seen much more since his initial observation that had provoked only the thought "that he was possibly a diabetic," and he does not claim to have detected from the paraphernalia, presumably examined by him, "any quantity (including a trace) of a controlled substance" that transforms innocent material into contraband, as pointed out *ante* in the text accompanying note 5.

Lawrence then asked to see Gill's identification. Gill reached into the brief case and produced a Michigan driver's license which appeared to have been altered by inserting Gill's picture over that of the true licensee.

According to Lawrence, Gill then began to get "pretty rowdy" and tried to get back into his car. Lawrence stopped him and immediately searched him for weapons. Lawrence then looked under the white towel and found a syringe full of clear liquid, a large spoon with a residue of cotton and carbon at the bottom, a bottle of alcohol, some cotton strainers, a residue-stained kitchen knife, some alcohol soaked tissue papers, a bottle of matches and a marihuana cigarette. Appellant was then arrested.

Lawrence called a wrecker in order to have Gill's car towed off to a private impound lot. While waiting for the wrecker, Lawrence began to search the rest of the car. Gill would not provide the officer with a key to the trunk. Lawrence, with the wrecker driver's help, removed the back seat of Gill's car and searched its trunk. There, Lawrence found a paper bag which contained thirty-five Dilaudid (hydromorphone) tablets, twenty-four Preludins, a plastic bag with one ounce of marihuana, and other miscellaneous items.

The court did not err in refusing to suppress the evidence of the hydromorphone tablets.

It is clear that Lawrence had sufficient articulable circumstances to justify an investigatory stop and frisk according to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.1976); *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr. App.1978). Lawrence saw Gill react with shock and surprise upon seeing a uniformed policeman, saw him with a syringe in his hand and saw him try to hide the syringe underneath the towel after being discovered. In *Shaffer v. State*, supra, we held that the occupants of an automobile were just as subject to a stop and frisk detention as were pedestrians. See also *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App.1974). A brief detention in order to maintain the status quo and to obtain more information may be reasonable in light of facts known to the policeman at the time. *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App.1977).

Lawrence was thus well within his constitutional authority in asking to see Gill's driver's license. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1978), the Supreme Court of the United States held that a police officer could order a driver out of his car and request the production of his driver's license. Such a limited intrusion on the defendant's personal liberty was far outweighed by the officer's need of personal protection once the defendant has been lawfully detained.

Lawrence then observed that the Michigan driver's license had been altered. Gill had, apparently, substituted his picture for that of the true licensee. At this point, the circumstances ripened into full probable cause to arrest. Article 6687b, Section 32, V.A.C.S. (alteration of a driver's license). See *Milton v. State*, 549 S.W.2d 150 (Tex.Cr. App.1977); *Jones v. State*, 493 S.W.2d 933 (Tex.Cr.App.1973). Officer Lawrence was thus empowered to conduct a search incident to a valid arrest in order to search for weapons or destructible evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The subsequent discovery of the items under the white towel was constitutionally permissible.

The issue then becomes the legality of the search and seizure of the contraband in the trunk of the car. A similar question was addressed in *Borner v. State*, 521 S.W.2d 852 (Tex.Cr.App.1975). There, the defendant was arrested for driving seventy-eight miles per hour in a seventy mile per hour zone. As the defendant's car was pulling over to the side of the road, the policeman saw the passenger trying to hide something under the seat. One officer approached the car, looked in, and found a pistol and a marihuana cigarette butt. The police could not open the trunk of the car. They called a wrecker and had the car towed to the nearest town where a key was made for the trunk. After opening the trunk, the police found sixty-eight pounds of marihuana.

This Court held the search of the trunk to be reasonable. 521 S.W.2d at 856. See also *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). Appellant's contention should be overruled.

Gill also argues that the trial court committed fundamental error in not instructing the jury on the defense of possession by legal prescription. No such instruction was requested. No fundamental error is shown. Nothing is presented for review. Article 36.15, V.A.C.C.P.; *Hayslip v. State*, 502 S.W.2d 119 (Tex.Cr.App.1973).

Gill argues that the sentence, which recites the punishment as five years and a $5,000.00 fine, should be reformed to conform to Article 42.09, V.A.C.C.P. (Indeterminate Sentencing). The judgment should be reformed to read confinement in the Department of Corrections for "a period of not less than two years nor more than 5 years and a $5,000 fine." Article 44.24, V.A.C.C.P.

The judgment should be reformed and affirmed.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

This is an appeal from a conviction for the offense of possession of a controlled substance, hydromorphone. After appellant entered a plea of not guilty, a jury found him guilty of the offense charged, and assessed his punishment at five years in the penitentiary and a fine of $5,000.

On original submission, a majority of a panel of this Court[1] held that the warrantless search of the locked trunk of the automobile[2] appellant was sitting in when arrested was an unreasonable search. Appellant was prosecuted for possession of hydromorphone found in a grocery store type bag that was seized as a result of the search.

We granted leave to the State to file its motion for rehearing, which limits itself without citation of authority to the contention that the search of the trunk was an "inventory search," and argues that it was conducted solely for the purpose of insuring "the security of the contents of the vehicle prior to [the police] turning it over to the private storage facility."

The State's motion for rehearing is denied for reasons stated herein.

Finding that all of the opinions previously written sufficiently state the facts of the case, we do not restate them, except when necessary to this opinion.

An "inventory search," when the term is used in the context of searching automobiles, was first established by the Supreme Court of the United States in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). There, the Supreme Court recognized that "automobiles are frequently taken into police custody," after which it becomes necessary to secure and inventory the contents of a lawfully impounded automobile. The facts in *Opperman* show that because of an overparking violation, the police towed the defendant's automobile to "the city impound lot." There, ". . . using a standard inventory form [prepared] pursuant to standard police procedures, the officer [thereafter] inventoried the contents of the automobile, including the contents of the glove compartment, which was unlocked. There he found marihuana contained in a plastic bag," which marihuana resulted in the prosecution of the defendant. The Supreme Court upheld the "inventory search" of the automobile, for the following reasons:

> closed-body automobile in which luggage or items of personal property may be stored, and where the spare tire of the automobile is usually kept, with normal entry accessible only by activating a device found inside the interior of the automobile or by inserting a key into an exterior lock of the automobile.

1. The date of the majority's opinion is May 28, 1980, and the opinion was authored by Roberts, J., with Clinton, J., concurring in the judgment with opinion, and with Douglas, J., dissenting with opinion.

2. The term "automobile trunk," or the phrase "trunk of an automobile," as used herein, means the exterior enclosed compartment of a

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell*, 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, *United States v. Kelehar*, 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California*, supra [386 U.S.] at 61–62, 87 S.Ct. 788 [at 790–91], 17 L.Ed.2d 730. The practice has been viewed as essential to respond to incidents of theft or vandalism. See *Cabbler v. Commonwealth*, 212 Va. 520, 522, 184 S.E.2d 781, 782 (1971), cert. denied, 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972); *Warrix v. State*, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.

Justice Powell, in fn. 6 of his concurring opinion, points out that the trunk of the automobile "had not been searched in this case because it was locked." As to locked compartments of an automobile, see also fn. 1 of Justice Marshall's dissenting opinion. Justice Powell also pointed out:

... Inventory searches, however, are not conducted in order to discover evidence of crime. The officer does not make a discretionary determination to search based on a judgment that certain conditions are present. Inventory searches are conducted in accordance with established police department rules or policy and occur whenever an automobile is seized. There are thus no special facts for a neutral magistrate to evaluate.

*Opperman's* facts do not involve the factual situation of an inventory search of a locked trunk of an automobile. In fact, as to a locked trunk of an automobile, entered into in the context of a true inventory search, our research has not revealed a single Supreme Court case since *Opperman* which discussed that issue. Some cases, however, appear to be in point, but we find they are distinguishable. *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), is not in point for, as the majority of the panel here so clearly pointed out: "... the officers there had *probable cause* to believe that the gun which they were seeking was in the trunk." (Emphasis added.) We find that conclusion is founded upon the following language set out in *Cady*.

Where, as here, the trunk of an automobile, which the officer *reasonably believed to contain a gun*, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments. (413 U.S. at 448, 93 S.Ct. at 2531, 37 L.Ed.2d at 718) (Emphasis added.)

Nor are the recent cases of *Robbins v. California*,[3] —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); or *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); in point for in neither of those cases was the Court confronted factually with an inventory search of "a locked trunk of an automobile," as we have defined that phrase. See fn. 2, *supra*.

What is often overlooked, when the issue concerns a true inventory search of an automobile, is the very simple fact that "An inventory search is not based upon probable cause—probable cause is an irrelevant action ..." C. Moylan, "The Inventory Search of an Automobile: A Willing Suspension of Disbelief," *The Prosecutor's Deskbook*, 189 (2nd Ed.). See also, M. Hermann, "Inventory Searches After *South Dakota v. Opperman*," Vol. 6, No. 11, *Search and Seizure Law Report* (November, 1979). In short, the expression, "inventory search," is not a talisman in whose presence the Fourth Amendment or Art. I, Sec. 9, of

---

**3.** We note that the Supreme Court has, see 30 Cr.L. 4035, October 14, 1981, granted certiorari in *U. S. v. Ross*, —— U.S. ——, 102 S.Ct. 386, 70 L.Ed.2d 205, to address the question whether the Court should reconsider *Robbins*.

the Texas Constitution fades away and disappears. E.g. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

A true inventory search of an automobile, occurring outside the legal concepts of probable cause or search incident to a lawful arrest, is just that and nothing more. It means that, using a standard inventory form prepared pursuant to standard police procedure, a police officer or his agent lawfully inventories the contents of a lawfully impounded motor vehicle. E.g. *Daniels v. State*, 600 S.W.2d 813 (Tex.Cr. App.1980); *Benavides v. State*, 600 S.W.2d 809 (Tex.Cr.App.1980). Because the officer or his agent is doing nothing more than *taking stock* of loose items of personal property found in the vehicle, items of personal property found in plain view or in unlocked compartments of the vehicle may be seized. In this context, a seizure of items found in an *unlocked trunk* of an automobile is permissible. The issue here is not whether the police had the lawful right to seize the grocery store type bag and examine its contents, but whether the police had the lawful right to forcibly enter the locked trunk of the automobile. Therefore, we do not find it necessary to discuss the fine legal distinctions between the search and seizure of open and unopened containers and their contents found in an automobile. See, however, *Araj v. State*, 592 S.W.2d 603 (Tex.Cr.App.1980); *Nastu v. State*, 589 S.W.2d 434 (Tex.Cr.App.1979).

The concept of a true inventory search is not an exception to the warrant requirement of either the Fourth Amendment or of Art. I, Sec. 9 of the Texas Constitution. A true inventory search need not be predicated upon the same requirements for either a showing of probable cause or obtaining a search warrant. Its existence really rests upon the caretaking responsibility a police officer has toward a lawfully impounded automobile. *Daniels*, supra. Here, the State fails to observe the distinction between a true inventory search and the requirement for probable cause for execution of a warrantless search. Absent a showing of probable cause and exigent circumstances, a warrantless search of a locked automobile trunk is per se illegal. Compare, *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Coolidge v. New Hampshire*, supra; *State v. Opperman*, 247 N.W.2d 673 (S.D.1976) (On Remand from the Supreme Court).

Additionally, the State overlooks the differences between one's expectation of privacy in a locked trunk of an automobile and the interior of an automobile. First, items of personal property located in the interior of an automobile can be seen in plain view, while objects in the trunk are completely hidden from an external view by the opaque nature of the trunk. Second, it is much more difficult for someone to break into a locked trunk than into the interior of a motor vehicle, as evidenced by the facts in this cause, since the interior of the vehicle, if locked from either the inside or the outside, can be entered merely by breaking a window or a vent; while the locked trunk of an automobile must have its lock forcibly picked, broken, or removed, or forced entry must be accomplished by other means, such as removing the interior back seat of the vehicle, as done here.

The second reason is also sufficient to outweigh the purposes of an inventory search of a locked trunk. If the locked trunk cannot be entered without the use of substantial force, it is unlikely that the police would be charged with losing or misappropriating items of personal property found therein, and the possibility of theft or vandalism by other persons of the locked trunk's contents is sufficiently minimized that the prophylactic purposes of the inventory search are not sufficient to outweigh the owner's expectation of privacy in the locked trunk. This expectation of privacy in a locked trunk can be outweighed or overcome only by a *reasonable expectation or the showing of probable cause* that, for example, the trunk contains a dangerous instrumentality, such as a gun or a bomb. *Cady v. Dombrowski*, supra. Additionally,

the force needed to get into the locked trunk of the automobile in question demonstrates that the purposes of an inventory search were not sufficiently strong to overcome appellant's privacy interests. Such interests can be overcome only by the showing of *probable cause* to believe some dangerous instrumentality, contraband, or fruits of a crime are contained therein, and exigent circumstances exist to preclude the need to obtain a warrant. Cf. *Borner v. State*, 521 S.W.2d 852 (Tex.Cr.App.1975).

We find that the State's attempt to sustain the search of the locked trunk of the automobile in question, under the concept of the search being a true inventory search, is grounded upon Officer Lawrence's testimony that "we asked the wrecker driver to pull the seat back *so we could inspect the trunk* . . ." (Emphasis added.) Another portion of Lawrence's testimony, however, is more revealing and actually sustains our analysis. "We asked him [the wrecker driver] to remove the back seat [in order to get into the trunk] and *he knew how and we didn't*." (Emphasis added.)

 We conclude that the argument the State makes to sustain this search is nothing more than advocating that a routine lawful arrest of a suspect in an automobile authorizes a search of virtually every nook and cranny of that automobile. We, however, do not agree to or accept this proposition as being either a valid or viable principle of law under the search provisions of our respective constitutions, or the interpretations made thereof by this Court.

Neither do we find that the reasons given by the State to justify the forced entry into the locked trunk of the automobile reflect sufficient reasonable circumstances which would authorize a warrantless search. We find that the chain of inferences advocated by the State, to establish without a showing of probable cause a lawful intrusion into the locked trunk, is too tenuous for this Court to sustain this search. Compare, *Brown v. State*, 481 S.W.2d 106 (Tex.Cr. App.1972).

Here, as the police officers had lawfully impounded the automobile, they had the lawful right to perform "caretaking" functions regarding it. However, under the facts presented, they did not have the lawful right to forcibly enter the locked trunk of the automobile. Under both of our constitutions, the forced entry into the locked trunk of the automobile constituted an unlawful intrusion.

We therefore find, after a careful review of the record, that the State's motion for rehearing is without merit, and it is ordered denied.

ROBERTS, DALLY, W. C. DAVIS, and McCORMICK, JJ., concur in result.