**Robert Leroy GUILLETT, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 610–83.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

James M. Sims, Houston (on appeal), for appellant.

John B. Holmes, Jr., Dist. Atty., Ray Elvin Speece and David Mitcham, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appeal is taken from a conviction for possession of a controlled substance, to-wit: Methaqualone. In a bench trial, appellant was assessed 101 days in the county jail and a fine of $250.

The First Court of Appeals, sitting in Houston, reversed appellant's conviction, relying upon both grounds of error, viz: the State failed to establish through the trial record an express, knowing, and intelligent waiver of a jury trial by the appellant; and secondly, the trial court erred in overruling appellant's motion to suppress the search, the search being an unlawful search pursuant to the Texas and United States Constitutions. We granted the State's petition for discretionary review to determine the issue as to whether or not the search conducted in appellant's automobile was improper.

In his second ground of error filed in his brief in the Court of Appeals, the appellant contended the trial court erred in overruling his motion to suppress the fruits of a search of his glove compartment. Appellant maintained that the search of his locked glove compartment was not justified under the guise of an "inventory search" and thus violated his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. The Court of Appeals, in a published opinion, noted that the instant case was governed by our holding in *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981).

We find the facts in the instant case to be quite distinguishable from those in *Gill*.

In *Gill*, supra, a police officer saw the defendant sitting alone in a parked car,

holding a syringe. The officer spoke to the defendant, made a radio call for assistance and asked the defendant for identification. The defendant produced an evidently altered driver's license. The defendant tried to get back into his car, but the officers restrained him and searched the interior of his car. The officers seized an altered driver's license, a syringe which contained an unidentified liquid, a marijuana cigarette, a towel, a bottle of alcohol, a spoon, some cotton, and a brief case which contained various papers. The officers asked the defendant for a key to the trunk of the car, but the defendant declined. The officers called a wrecker. They asked the wrecker driver to remove the back seat of the car so that they could search the trunk. The back seat of the car was removed and the officers recovered a bottle of hydromorphone tablets in the trunk of defendant's car. In *Gill*, supra, Judge Teague, writing for the majority on State's motion for rehearing, opined:

"We conclude that the argument the State makes to sustain this search is nothing more than advocating that a routine lawful arrest of a suspect in an automobile authorizes a search of virtually every nook and cranny of that automobile. We, however, do not agree to or accept this proposition as being either a valid or viable principle of law under the search provisions of our respective constitutions, or the interpretations made thereof by this Court.

"Neither do we find that the reasons given by the State to justify the forced entry into the locked trunk of the automobile reflect sufficient reasonable circumstances which would authorize a warrantless search. We find that the chain of inferences advocated by the State to establish without a showing of probable cause a lawful intrusion into the locked trunk, is too tenuous for this Court to sustain this search." [Citations omitted.]

Judge Teague, however noted in the last paragraph of *Gill*, supra:

"Here, as the police officers had lawfully impounded the automobile, they had the *lawful right* to perform 'caretaking' functions regarding it. However, *under the facts presented*, they did not have the lawful right to forcibly enter the locked trunk of the automobile. Under both of our constitutions, the forced entry into the locked trunk of the automobile constituted an unlawful intrusion." [Emphasis added.]

It is of paramount importance to note that in *Gill*, supra, the defendant was asked by the officers to provide them with a key to his car and the defendant declined. The facts show that in the instant case on March 6, 1981, Houston police officers Pennington and Smith observed appellant's automobile blocking a lane of traffic. The officers pulled alongside the vehicle and observed appellant with a syringe in his hand. They also observed appellant and a female passenger "stumbling and falling about" when the two exited the appellant's automobile. Appellant was arrested for driving while intoxicated, and the female passenger with public intoxication. They were both handcuffed and placed in the patrol car. The officers determined that there was no one with whom to entrust appellant's car and that the car was unsafe to drive, so they called for a wrecker. Before having the car towed to the police station, Officer Pennington conducted a routine "inventory search." Pennington recovered a syringe and two marihuana cigarettes from the interior of the car. Pennington then took appellant's car keys, unlocked and searched the locked glove compartment of the car, and seized an open bank bag containing, inter alia, methaqualone, for which appellant was prosecuted.

Thus in the instant case the officers had the keys to appellant's car in hand and used the keys to unlock the glove compartment. In *Gill*, supra, since the defendant refused to give the officers a key to his car, the officers proceeded to have the wrecker driver remove the rear seat in order to gain access to defendant's trunk. Judge Teague obviously found this of great significance in *Gill*, supra, when he concluded:

"We find that the State's attempt to sustain the search of the locked trunk of the automobile in question, under the concept of the search being a true inventory search, is grounded upon Officer Lawrence's testimony that 'We asked the wrecker driver to pull the seat back *so we could inspect the trunk....*' [Emphasis added.] Another portion of Lawrence's testimony, however, is more revealing and actually sustains our analysis 'We asked him [the wrecker driver] to remove the back seat [in order to get into the trunk] and he *knew how and we didn't.*'" [Emphasis added.]

We conclude that the facts in the instant case are much like those in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1096 (1976). In *Opperman,* supra, defendant's car was towed from an illegal parking zone to the police department impoundment lot. At the direction of an officer, the car door was then unlocked and, using a standard inventory form pursuant to standard police procedures, the officer inventoried the contents of the car, including the contents of the glove compartment which was unlocked. He found marihuana contained in a plastic bag within the glove compartment. The Supreme Court, writing through Chief Justice Burger, held:

"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventoring the automobile's contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; to protect the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger."

Chief Justice Burger concluded that the conduct of the police in *Opperman,* supra, was not unreasonable under the Fourth Amendment.

■ The only significant difference in the facts in the instant case and those in Opperman are that defendant's car in Opperman was locked and the glove compart-

ment was unlocked, whereas in the instant case the car was unlocked and the glove compartment was locked. We do not find this difference to be of any great significance insofar as the reasonableness of the inventory search.

■ The important similarity between the facts in Opperman and the instant case is that the police had ready and free access to the automobile in both cases. We therefore find that the Court of Appeals erred in sustaining appellant's second ground of error and find that the search conducted by the police was a lawful inventory search. See also *Ward v. State,* 659 S.W.2d 643 (Tex.Cr.App.1983), and *Gary v. State,* 647 S.W.2d 646 (Tex.Cr.App.1983).

■ In his first ground of error before the Court of Appeals, appellant contended that the record failed to show that he affirmatively and voluntarily waived his constitutional right to a trial by jury. The Court of Appeals correctly noted that, as a matter of federal constitutional law, the State must establish through the trial record an express, knowing, and intelligent waiver of jury trial by a defendant. A waiver of jury is not to be presumed from a silent record, at least on direct appeal. *Samudio v. State,* 648 S.W.2d 312 (Tex.Cr. App.1983) cert. denied —— U.S. ——, 103 S.Ct. 3113, 77 L.Ed.2d 1368 (1983). In the instant case we have only the silent record before us. The State has failed to meet its constitutional burden of establishing waiver of jury trial. The Court of Appeals was correct in sustaining appellant's first ground of error.

We sustain the Court of Appeals with regard to ground of error No. 1. We reverse the judgment of the Court of Appeals as to ground of error No. 2 and accordingly affirm the judgment of the trial court.

TEAGUE, Judge, dissenting.

I am compelled to dissent because the majority opinion implicitly puts its seal of approval on a legal concept that is alien to me: that probable cause to arrest the driver of a motor vehicle will justify a warrant-

less search of a locked glove compartment of the vehicle as an incident to the arrest.

The First Court of Appeals at Houston ordered appellant's conviction reversed after it expressly and correctly found that the trial court erred in overruling appellant's motion to suppress. *Guillett v. State*, 651 S.W.2d 902 (Tex.App.—Houston [1st] 1983). Justice Levy, who authored the unanimous panel opinion for the Court of Appeals, which panel consisted of himself and Justices Smith and Duggan, correctly interpreted what Judge Roberts, who wrote the original majority opinion in *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981), stated therein, and what this writer stated in the unanimous opinion on State's motion for rehearing. The State's petition for discretionary review should be dismissed because it was improvidently granted.

The proposed majority opinion correctly points out in succinct fashion what happened in this cause:

[Officer] Pennington took appellant's car keys [from the ignition switch], unlocked and searched the locked glove compartment of the car, and seized an open bank bag containing, inter alia, methaqualone, for which appellant was prosecuted.

The majority opinion, however, apparently to justify upholding the warrantless search that Pennington conducted, recklessly, see V.T.C.A., Penal Code, Section 6.03(c), invokes and applies to this cause the legal concept of "an inventory search."

When the facts of a case have called for it, this Court in the past has invoked and applied the legal concept of "an inventory search." However, that legal concept is inapplicable to the factual situation at bar because the facts reflect, pure and simple, nothing less than that a warrantless search occurred *without probable cause.*

I find the majority opinion implicitly holds that the expression, "an inventory search," *is* a talisman in whose presence the provisions of Art. I, Section 9, Texas *Constitution, the Fourth Amendment,* and Article 38.23, V.A.C.C.P., fade way and disappear.

The search that was made by Pennington is, however, actually proscribed and condemned by the *Texas* Constitution, *Texas* statutory law, and *Texas* case law, upon which appellant relies, as well as being proscribed and condemned by the Fourth Amendment to the United States Constitution, upon which appellant also relies, and, perhaps, by decisions of the United States Supreme Court, upon which he does not rely, as authority in support of the motion to suppress he urged in the trial court. The majority opinion errs in not adhering to the precepts of the respective Constitutions, as well as the statutory law of this State, and the case law of this Court.

Contrary to the decision of the Court of Appeals, the majority opinion reflects a total lack of understanding what this Court's unanimous opinion on rehearing in *Gill v. State,* supra, stated and held. Most important, what is overlooked by the majority opinion is the very simple fact that the sole purpose of the unanimous opinion on rehearing in *Gill v. State,* supra, was to explain to all concerned, affected, and reasonable persons why the legal concept of "an inventory search" was inapplicable to that cause.

In all due respect to Judge Campbell, the author of the majority opinion, he has totally failed to place in the opinion sufficient facts which would justify invoking and applying to this cause the legal concept of "an inventory search." After having read the record, I understand why Judge Campbell has failed to state sufficient facts: because no facts were presented in the trial court which would justify invoking and applying to this cause the legal concept of "an inventory search"! Failing to find sufficient facts which would support "an inventory search," Judge Campbell, nevertheless, implicitly, opts to apply to this cause the inapplicable principle of law that a search incident to a lawful arrest is permissible. See, however, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

By approving the unlawful warrantless search that occurred in this cause, the ma-

jority opinion denigrates the rights the Texas and Federal Constitutions guarantee our citizenry. By approving the unlawful search that occurred in this cause, the majority opinion moves the citizens of this State one notch closer to what the writer George Orwell wrote 40 years ago, when he stated the following:

> I do not believe that the kind of society I describe will arrive, but I believe ... that something resembling it *could arrive* ...

Also see Convery and Cheever, "Orwellian Nightmare: Fact or Fiction?," *The Champion*, December, 1983, (a publication of the National Association of Criminal Defense Lawyers).

I dissent to the "arrival."

MILLER, Judge, dissenting.

I dissent for the reasons given in my dissent to *Kelley v. State*, 677 S.W.2d 34, (Tex.Cr.App. No. 63,869 delivered this day). Although this case involves entry into a locked glove compartment instead of a locked trunk, the principle is the same. As pointed out in my dissent in *Kelley*, supra, the United States Supreme Court has never sanctioned keyed entry into a locked glove compartment under the guise of the inventory search doctrine. In fact they have pointed out, in every inventory search case they have written on involving an automobile glove compartment, that the glove compartment "inventoried" by police was *unlocked*. I dissent.

CLINTON, J., joins.