Affirmed and Memorandum Opinion filed May 22, 2007








Affirmed and Memorandum Opinion filed May 22, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00147-CR

NO. 14-06-00148-CR

 

SHEREEF JAMAR BENJAMIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause Nos. 1004159 &
1039460

                                                                                                                                             
  

 

M E M O R A N D U M  O P I N I O N








Appellant,
Shereef Jamar Benjamin, was charged with two counts of aggravated robbery for
separate offenses allegedly committed on the same night.  After he signed a
waiver of trial by jury, the trial court conducted one bench trial on both
charges.  The trial court found appellant guilty of both offenses and sentenced
him to thirty years= confinement for each conviction, to be served concurrently. 
Appellant filed a separate brief in his appeal of each conviction.  In both
cases, he raises an identical issue, in which he asserts that he did not
voluntarily, intentionally, and knowingly waive his right to trial by jury.  He
also contends the evidence is legally and factually insufficient to support the
convictions based on the particular facts of each offense.  Because all
dispositive issues are clearly settled in our jurisprudence, we issue this
memorandum opinion. See Tex. R.
App. P.  47.4.  We affirm both convictions.

I.  Waiver of Right to Jury Trial

We will
consider together the first issue raised by appellant in both cases because the
contentions are identical: he did not voluntarily, intentionally, and knowingly
waive his right to a jury trial.  The right to a jury trial in a criminal
prosecution is guaranteed by the United States and Texas constitutions.  See
U.S. Const. Amend. VI; Tex. Const.   art. 1, ' 10; see also Tex. Code Crim. Proc. Ann. art. 1.12
(Vernon 2005).  A waiver of the right to trial by jury in a criminal proceeding
Amust be made in person by the
defendant in writing in open court with the consent and approval of the court,
and the attorney representing the State.@  Tex.
Penal Code Ann. 1.13(a) (Vernon 2005).  The State must establish through
the trial record an express, knowing, and intelligent waiver of jury trial by a
defendant.  Guillett v. State, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984).

Appellant
cites authority holding that waiver of the right to a jury trial cannot be
inferred from a silent record on direct appeal.  See Samudio v. State,
648 S.W.2d 312, 314 (Tex. Crim. App. 1983) (citing, inter alia, Johnson v.
Zerbst, 304 U.S. 458 (1938)).  However, in this case, the record is far from
silent.  Appellant signed a written AWaiver of Trial by Jury in Felony
Less Than Capital@ for both underlying cases in open court with the consent and
approval of the trial court and the State=s attorney, expressly waiving his
right to trial by jury.  The trial court noted on the waiver form that it was Aintentionally, knowingly, and
voluntarily made by [appellant].@  Nevertheless, appellant contends he
did not execute the waiver voluntarily, intentionally, and knowingly because he
did not understand that only a juryCnot the trial courtChad authority to consider probation
as punishment and he felt pressured to sign the document.  However, the record
negates this contention.








The
trial court held a hearing on the date the cases were originally set for jury
trial.  The trial court had been informed that appellant now wanted a bench
trial.  At the hearing, appellant=s counsel read the jury waiver form
into the record. Then, the trial court confirmed appellant had never been
convicted of a felony and was eligible for probation.  During the initial part
of the hearing, the trial court twice informed appellant that it could not give
him probation for an aggravated robbery conviction, but a jury could place him
on probation.[1]  In at least
one instance, appellant indicated he did not understand the waiver and was
interested in receiving probation.  In other instances, he indicated that he
wanted a bench trial.  During the initial part of the hearing, appellant
declined to sign the waiver because he did not understand it and his parents
were not present.  The trial court remarked that appellant apparently had great
reservations about the waiver and it planned to commence a jury trial.

When the
hearing later resumed following a recess, appellant raised the jury waiver
issue again.  The trial court explained that execution of the waiver would
result in a bench trial.  This time, appellant signed the waiver.  Then, the
following exchange occurred:

THE COURT:            You understand that you=re giving up the right to have a jury trial, and you
want me to decide whether or not you=re
guilty.  Is that what you want?

[APPELLANT]:         Yes, ma=am.

THE COURT:            Okay.  You understand that there
is no way you can get probation if I hear your case?

[APPELLANT]:         I=m all right with that.








THE COURT:            Okay.  And are you freely and
voluntarily  - - did you freely and voluntarily sign this document, the waiver
of jury trial?  Did you do that freely and voluntarily?  Is that your choice?

[APPELLANT]:         I don=t have no other choice.

THE COURT:            Well, you have two other
choices.  Plea bargain or jury trial.  So, I just want to make sure no one has
forced you or threatened you to get you to do this, have they?  Did anyone
force you or threaten you, sir?  Yes or no?  Have you been forced or
threatened?

[APPELLANT]:         I just  - - 

THE COURT:            Huh?  I can=t hear you, sir.  Come up a little closer and speak
loudly so I can hear you.  Has anyone forced you or threatened you?

[APPELLANT]:         No, ma=am.

THE COURT:            I=m sorry?

[APPELLANT]:         No, ma=am

THE COURT:            Is that no, ma=am

[APPELLANT]:         Yes, ma=am.

THE COURT:            Okay.  Has anyone promised you
anything to do this?

[APPELLANT]:         No, ma=am.

THE COURT:            Okay.  And it=s just that you feel like you=re forced to have to make a decision?  Is that what
the forcing is, that I=m forcing you to make a decision one way or the other?
Is that what you=re referring to a while ago when you said you felt
forced.

[APPELLANT]:         Yes, ma=am

THE COURT:            Okay.  Has anyone threatened
you?

[APPELLANT]:         (Nods in the negative)

THE COURT:            Can you say it so [the court
reporter] can write it down?  Anyone threatened you?

[APPELLANT]:         I=m in fear of my life.  I don=t
want to say.

THE COURT:            Okay.  Sir, I have - - I=m asking a simple question.  Have you signed this
paper of your own free will, yes or no?

[APPELLANT]:         I=m signing the paper.

THE COURT:            I=m sorry.








[APPELLANT]:         I=m signing the paper.

THE COURT:            Of your own free will?  Is that
what you want to do?

[APPELLANT]:         Yes, ma=am.

The trial court then
approved the waiver.  

Appellant
claims he did not intentionally, knowingly and voluntarily execute the waiver
because he did not understand that the trial court lacked authority to consider
probation as a punishment.  However, the trial court explained several times
during the hearing that it could not place appellant on probation.  Although
the record reflects appellant initially did not understand this information,
the final exchange demonstrates that appellant understood the trial court could
not place him on probation, yet he chose to execute the waiver.

Appellant
also suggests he felt pressured to sign the waiver and was Anot thinking clearly.@  He refers to his comments during
the hearing, indicating he was concerned about the cause numbers on his
indictments and was afraid someone might poison his food in jail.  Throughout
the hearing, appellant attempted to discuss these various matters unrelated to
the jury waiver.  However, there is no indication his ultimate decision to
waive a jury trial was influenced by these concerns.  Further, nothing in the
final exchange with the trial court indicates he was Anot thinking clearly@ with respect to execution of the
waiver.  Moreover, although he was initially reluctant to sign, ultimately he
acknowledged that the court was not forcing his signature; rather, he was
forced to make a decision.








Finally,
we note that, after execution of the jury waiver, appellant asked the trial
court whether his acceptance of a plea bargain would result in his being moved
out of the jail because he felt unsafe there.  Based on his question, the trial
court proposed that he request another competency evaluation although he had
previously been found competent; the court anticipated it would not agree to
any eventual plea bargain if the appellant felt forced to accept it based on
fear of remaining in the jail.  Significantly, the trial court remarked, AI certainly don=t think he is incompetent today.  If
I thought he was incompetent, I sure would not have accepted his jury waiver.@

In sum,
the record reflects appellant voluntarily, knowingly, and intentionally waived
his right to a jury trial.  See Fuller v. State, No. 05‑91‑00693‑CR,
1993 WL 493577, *5 (Tex. App.CDallas Nov 30, 1993, pet. ref=d) (not designated for publication)
(rejecting defendant=s claim he did not knowingly and voluntarily execute written
jury waiver and was coerced by trial court; defendant stated at arraignment he
wanted a jury trial, but after trial court explained law on probation and
subsequent recess, defendant executed written waiver, and trial court
ascertained on the record defendant understood the options but chose to waive a
jury trial).  We overrule appellant=s first issue in both cases.

II.  Sufficiency of the Evidence

In his
remaining issues in each case, appellant contends the evidence is legally and
factually insufficient to support his convictions for aggravated robbery.  A
person commits aggravated robbery if, in the course of committing theft and with
intent to obtain or maintain control of the property, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death and uses or exhibits a deadly weapon.  See Tex. Pen. Code Ann. ' 29.02(a)(2) (Vernon 2003); Tex. Pen. Code Ann ' 29.03(a)(2) (Vernon 2003). 








In
considering a legal-sufficiency challenge, we review all the evidence in the
light most favorable to the finding to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  When
reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (quoting Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996)). Before we may reverse for factual
insufficiency, we must first be able to say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the
jury=s verdict.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

Sufficiency of the
Evidence In Appellate Case No. 14-06-00147-CR (Trial Court Cause No. 1004159) 

Relative
to case number 14-06-00147, appellant was charged with the aggravated robbery
of Andrea Lane.  Lane testified that, shortly after midnight on October 16,
2004, she and Khoa Ly were walking through the parking lot of an inn in Houston
when a white Toyota Camry appeared.  A man, later identified as appellant,
exited the passenger side, waived a gun, and demanded their possessions. 
Another man exited the driver=s side.  He did not have a gun but also tried to take their
possessions.  Lane and Ly gave them money and cell phones.  The perpetrators
also demanded their car keys but left in the Camry after discovering the
victims= car had a standard transmission. 
During this incident, Lane was afraid she would be shot. 

In his
second and third issues in this case, appellant contends the evidence is
legally and factually insufficient  to support the finding that he committed
aggravated robbery of Lane.  The sole basis for his complaint is that there is
no evidence he used or exhibited a firearm during the robbery.  When, as in
this case, the State alleges in an indictment for aggravated robbery that the
deadly weapon used or exhibited by the defendant was a firearm, the State is
required to prove, beyond a reasonable doubt, that the deadly weapon used or
exhibited was, in fact, a firearm.  Arthur v. State, 11 S.W.3d 386, 389
(Tex. App.CHouston [14th Dist.] 2000, pet. ref=d) (citing Gomez v. State, 685
S.W.2d 333, 335B36 (Tex. Crim. App. 1985)).  Appellant argues the State
proved, at most, he used or exhibited a gun, but there was no evidence
he used or exhibited a firearm.  See id. (recognizing Agun@ is a much broader term than Afirearm@ and may include such non-lethal
instruments as BB guns, blow guns, pop guns, and grease guns).








To the
contrary, the State presented ample evidence that appellant used or exhibited a
firearm during the robbery.  Lane testified the gun was long and silver,
Alike a revolver.@  She described the gun as a Arevolver@ because Ait=s like the ones in the movies, like
cowboys use.@  Moreover, the suspects were apprehended within a few hours after the
robbery of Lane, following an extensive police chase.  Officers noticed a gun
inside the suspects= vehicle wedged between the console and passenger seat.  They
unloaded the gun for safety and then left it in the vehicle.  Officer Frank
Martinez processed the vehicle after it was towed to the police station.  He
found the gun and .45 caliber live rounds and spent rounds on the front
passenger seat.  At trial, Officer Martinez referred to the gun at different
times as a Arevolver@ and a Apistol.@  He identified State=s Exhibit 1 as the Arevolver@ he recovered from the vehicle.  In
addition, Lane testified that State=s Exhibit 1 appeared to be the gun
appellant used in the robbery.

Testimony
regarding use or exhibition of a Arevolver@ or a Apistol@ is sufficient to support a finding
that the defendant used or exhibited a firearm.  See Gomez, 685 S.W.2d
at 336; Riddick v. State, 624 S.W.2d 709, 710B11 (Tex. App.CHouston [14th Dist.] 1981, no pet.). 
Accordingly, the evidence is legally and factually sufficient to support the
trial court=s finding that appellant used or exhibited a firearm during the robbery
of Lane.  We overrule appellant=s second and third issues and affirm his conviction in case
number 14-06-00147-CR.

Sufficiency of the
Evidence in Appellate Case No. 14-06-00148-CR  (Trial Court Cause No. 1039460)








With
respect to case number 14-06-00148-CR, appellant was charged with aggravated
robbery of Reynaldo Molina, which occurred on the same night as the robbery of
Lane.  Molina testified that he was driving his wife to work in Houston when he
stopped in a parking lot to safely continue a discussion about family matters. 
A medium-sized white car appeared behind them, blocking Molina=s vehicle.  Two men exited the car. 
One man, later identified as appellant, knocked on Molina=s window with a Ahuge gun.@  Molina lowered his window because
he was frightened.  Appellant pointed the gun at Molina=s chest and repeatedly yelled, AWhere is the dope?@  Molina denied having any Adope@ but told appellant he could take his
money.  Molina gave appellant all the money in his wallet.  Meanwhile, the
other man approached the passenger side of Molina=s vehicle.  This man took the Molinas= cell phones and also touched Mrs.
Molina=s breasts and genitals.  Molina was
unable to help her because appellant was still pointing a gun at him and he
feared for his life.  Appellant asked for the keys to Molina=s vehicle.  While Molina was
searching for the keys, which he had dropped, appellant and his cohort left.

Appellant
presents four issues challenging the legal and factual sufficiency of evidence
to support his conviction in this case.  In his second and third issues, he
again contends the evidence is insufficient to prove he used or exhibited a firearm
during the robbery of Molina and merely shows he used or exhibited a gun. 
However, at trial, Molina specifically referred to the gun as a Apistol.@  During cross-examination, he was
asked about tattoos he had noticed on appellant=s arm during the robbery.  Molina
responded that the tattoos were Aon the anterior aspect of the arm,
when he was holding the pistol against my chest.@  (emphasis added).  Moreover, as we
have discussed, at trial, Officer Martinez referred to the gun found in
appellant=s vehicle after his arrest as a Arevolver@ and a Apistol@ and identified State=s Exhibit 1 as the Arevolver.@  Molina also identified State=s Exhibit 1 as the gun appellant
pointed at him during the robbery.  Accordingly, the evidence is legally and
factually sufficient to support the trial court=s finding that appellant used or
exhibited a firearm during the robbery of Molina.  We overrule his second and
third issues.








In his
fourth and fifth issues, appellant argues the evidence is insufficient to
support a finding that he acted Ain the course of committing theft and
with intent to obtain or maintain control of the property@ belonging to Molina as required for
a robbery conviction. Proof of a completed theft is not required to establish
the offense of robbery.  Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim.
App.1996).  The Ain the course of committing theft@ element of robbery means Aconduct that occurs in an attempt to
commit, during the commission, or in immediate flight after the attempt or
commission of theft.@  Tex. Pen. Code  Ann.
' 29.01(1) (Vernon 2003).  While
intent to steal must be shown to prove attempted theft, this intent may be
inferred from circumstantial evidence.  Wolfe, 917 S.W.2d at 275.

Appellant
appears to complain that he could not have acted Ain the course of committing theft and
with intent to obtain or maintain control@ of any property belonging to Molina
because Molina did not have any dope.  However, appellant also specifically
demanded Molina=s car keys during this incident.  Morever, Officer Fabian
Hernandez testified that appellant admitted he robbed Molina and Lane. 
Appellant told Officer Hernandez his main objective when robbing Molina was to
obtain his vehicle.  Accordingly, we hold the evidence is legally and factually
sufficient to support the trial court=s finding that appellant acted Ain the course of committing theft and
with intent to obtain or maintain control of  property@ belonging to Molina.  We overrule
appellant=s fourth and fifth issues and affirm the conviction in case number
14-06-00148-CR.       

 

 

/s/        Charles W. Seymore

Justice

 

 

Judgment rendered and Memorandum Opinion filed May 22,
2007.

Panel consists of Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  See Tex.
Code Crim. Proc. Ann. art. 42.12 ''
3g(a)(1)(F), 3g(a)(2) (Vernon Supp. 2006) (stating that provisions authorizing
trial court to place defendant on community supervision do not apply to a
defendant adjudged guilty of aggravated robbery or upon a finding a defendant
used or exhibited a deadly weapon during commission of a felony); Tex. Code Crim. Proc. Ann. art. 42.12 ' 4 (Vernon Supp. 2006) (generally requiring, subject
to certain exceptions and requisites, that trial court place defendant on
community supervision if recommended by the jury, sentence imposed does not
exceed ten years, and defendant has not previously been convicted of a felony).