

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00106-CR

MOISES RENTERIA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 38,802-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

After Moises Renteria allegedly sexually abused a child relative of his for years and ultimately impregnated her, Renteria was charged with aggravated sexual assault of, and indecency with, a child under fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2015), § 21.11 (West 2011). Months after a psychologist found Renteria competent to stand trial and after the trial court's extensive on-the-record interview with Renteria to determine whether he wanted to have a trial to the court or to a jury, Renteria signed a waiver of a jury trial. After a trial to the court, Renteria was found guilty on both charges.[1] He appeals, asserting that there should have been a formal competency hearing and that he did not effectively waive his right to have a jury trial.

Because (1) the record supports the trial court's finding that Renteria voluntarily waived a jury and (2) a formal competency hearing was not required on this record, we affirm the trial court's judgment.

Renteria did not speak English at trial and testified and addressed the court through an interpreter. His appellate arguments derive from the translated statements he made at a pretrial hearing and the trial before the court. A summary and description of these statements will set the stage for our analysis on both appellate contentions.

---

[1]Renteria was sentenced to life imprisonment for the aggravated sexual assault and twenty years' imprisonment for the indecency, the sentences to run concurrently.

In February 2011,[2] the trial court heard and denied a motion for Renteria's attorney to withdraw. At that hearing, the translator summarized a letter Renteria wrote to the court. In the letter, Renteria complained that his attorney had told him that things would occur that did not occur, that his getting to court was delayed many times, and that the lawyer "is a witch." According to the interpreter's summary, Renteria also complained he had been told he would give a semen sample, but instead, "it was a cotton swab for this test."

Renteria then testified to the trial court. For context, here is a large section of what he said at that pretrial hearing:

> About that of the semen the -- an attorney from the protection of children told me that I was going to be giving a semen sample and that they were going to pass me through the lie detector test.
>
> On November the 8th, the gentleman here present came to visit me of 209 [sic]. He told me that everything that that little lady had told me was not valid. That he was -- that he was going to do his work and only his work.
>
> I have many things to say, but I have 16 months and 17 days until today here. The 29th of November the gentleman here present would give me a paper for me, so that I would sign it. Where supposedly a trial would be open. Well, why if you go -- trial was going to be open that's what he left me thinking. I think that there's many things I think that it's being -- I'm being discriminated upon. I have 16 months with 17 days. If what -- like, Judge, many times have I been passed a judge like you, Mr. Judge, Your Honor. And there I've been told that it's going to be from one to six months before I'm brought in front of a judge.
>
> And this case -- and this case my father has died and my mother has suffered an accident because of the death of my father. I have four children that are starving in Mexico, and my wife is working. This gentleman told me that it didn't matter, and it wasn't important to him. That that didn't matter. I have a lot to say and many things to say, but I prefer to remain silent.

---

[2]The Texas Court of Criminal Appeals authorized an out-of-time appeal for Renteria. *Ex parte Renteria*, cause number WR-83,119-01, 2015 WL 2452791 (Tex. Crim. App. 2015) (not designated for publication).

3

The trial court replied by vouching for counsel's professionalism and abilities and inquiring about plea negotiations.

Renteria "swore" to the trial court that he had never been offered anything. In response, the State advised the court that an initial plea offer of fifteen years' imprisonment had been made. Renteria's attorney said he had relayed the fifteen-year offer to Renteria, who refused it, claiming he was not guilty. Later, after the DNA results of the child victim's baby showed Renteria to have fathered the infant, the State offered forty years' imprisonment, which it lowered to thirty-five years after speaking with Renteria's attorney. That offer appears to have remained open at the hearing. Although the record is not explicit as to whether counsel relayed the State's offer of thirty-five years, based on the State's statement that the offer was reduced from forty to thirty-five years, there is at least a suggestion that the offer was also conveyed to Renteria.

*(1)* *The Record Supports the Trial Court's Finding that Renteria Voluntarily Waived a Jury*

A significant portion of the trial court's discussion with Renteria involved his right to a jury trial. Renteria's counsel advised the court that they had discussed a waiver. When his attorney told him a jury of twelve people would decide the case, Renteria asked if he "would have 12 judges?" Counsel told Renteria the jurors would not be professional judges, but citizens, to which Renteria told his attorney, "I don't want that." Renteria's trial counsel said he asked Renteria if he wanted to try his case to the judge, and Renteria said he wanted "a trial to the judge." A written waiver of jury trial had not yet been executed, however. The trial court then asked Renteria directly if he wished to have a trial to a jury or to the court, and Renteria answered as follows:

4

[Defendant]: Well, why am I being asked these questions? That's why I'm amazed. Why? What could have been done in 6 months; what could have been done in 6 months is being now done in 16 months and 17 days?

THE COURT: I think what the Court is going to do out of abundance of caution -- yes, go ahead.

[Defendant]: We're not going to talk much. The paper, the one this gentleman wanted me to sign on the 29th of November. The paper that was signed in the middle of December of 2009 -- and the most important, the name of the first lab and the address of the first lab is what I need. Because I heard that the -- that the lab has changed. They changed to another lab. And another thing that I came to find out in June -- well, in July they changed me to the jail in -- across the street. I don't want to tell another people. The pastor, I asked the pastor to investigate what this -- a lady named Ana when the tests were run over there. And the preacher told me, 13th of April. Well, I have no support from anybody. What I'm telling you Mr. Judge or Your Honor is do with me whatever you want. With all my respect.

The trial court then ordered a competency examination of Renteria. The examining doctor found Renteria to be competent to stand trial. The competency issue is addressed later in this opinion.

Renteria's case resumed August 1, 2011, and the matter of whether there would be a trial to the court or before a jury was addressed. The trial court advised Renteria of the court's understanding that Renteria wished to waive his right to a jury trial and try the matter to the court. Renteria replied, "Yes, that's how it is." The trial court then explained the necessity of Renteria waiving his right to a jury trial via a written document. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (West Supp. 2015).

In his appellate brief, Renteria cites generally the next ten pages of discussion in the reporter's record as making "abundantly clear" that Renteria did not knowingly, intelligently, and voluntarily waive his right to a jury trial. In those ten pages, we find several instances of Renteria

questioning why he had to execute a signed document to waive his right to a jury trial and be tried by the court. The discussion was often difficult:

> THE COURT: I understand you wish to have a trial to the Court; is that correct? No jury but a trial to the Court?
>
> [Defendant]: Yes, that's how it is.
>
> THE COURT: Under our law, for you to say "no" to a jury and "yes" to the Court hearing the case, you must sign a piece of paper saying, "I do not want a jury trial."
>
> [Defendant]: And if I deny signing?
>
> THE COURT: We would have a trial to the jury.
>
> [Defendant]: But there it says that it's either with the judge or with the jury.
>
> THE COURT: Correct. It's your choice.
>
> [Defendant]: Why are they asking for a trial with a jury and with a judge?
>
> THE COURT: You make that decision.
>
> [Defendant]: I have said to get in front of the judge only. I have so much time here and that cannot be. Those questions shouldn't be asked. They need to bring me and do whatever.
>
> THE COURT: To protect you --
>
> [Defendant]: One year and ten months.
>
> THE COURT: To protect you, our law says you must sign your name to say "no" to a jury. That's our law.
>
> [Defendant]: Like I'm saying, I've been in front of judges, and I've never had to sign a paper.
>
> THE COURT: Have you ever had a trial to the Court?
>
> [Defendant]: With the judge.

6

THE COURT:  Here in Gregg County?

[Defendant]:  In Coleman, Texas.

THE COURT:  Felony or misdemeanor?

[Defendant]:  Felony.

THE COURT:  Our law requires you must sign to say "no" to a jury, "yes" to the judge.  What do you want to do?

[Defendant]:  Well, so if I don't sign you're going to put me with 12 jurors?

THE COURT:  Yes, that's the law.

[Defendant]:  Well, that's the law?

THE COURT:  Yes.

[Defendant]:  Oh.

THE COURT:  So what do you want to do?  What do you want to do, sir?

[Defendant]:  Well, we are now in front of you.

THE COURT:  We haven't started the trial.

[Defense Counsel]:  Judge, he says --

[Defendant]:  If I deny myself, when are you going to put me with those people?

THE COURT:  We would set it for a jury trial.

At this point, the court asked the State when a jury trial could be scheduled; the attorney for the State responded that, owing to the scheduling constraints of a physician witness, a jury trial might occur in the next two months.  The court then allowed Renteria to continue his address.

THE COURT:  So you -- go ahead, I'm sorry.

7

[Defendant]: On the 17th of February, you told me you were going to bring me to the doctor. On the 17th of February, you suspend the court. Well, well, where are the doctors? On the 27th of September, you put me in front of Alfonso Charles of the 124th, and now they don't put me in front of him either. On the 29th of November, the same thing happens. On the 27th of September, there were a lot of people. Right now I've seen less people, less people.

[Defense Counsel]: Your Honor --

[Defendant]: And I don't know what's happening.

THE COURT: Well, let me say this. I understand you've been in jail a long time. I understand you're frustrated. Here's the options you have today. And it doesn't make me any difference what you do.

If you want me to hear the case today, trial to the Court, I'm glad to do that. Before I can hear it, the law requires that you write your name and say "no" to a jury. You don't have to do that. If you want a jury then we'll reschedule this to a later time when the doctor and the witnesses can be here.

It's your choice. You just need to tell me what you want to do. And it doesn't make me any difference what you do.

[Defendant]: That's fine what you say. What I'm thinking is that this problem could have been resolved in a period of six months or even before.

THE COURT: Maybe it could have, but here we are today. What do you want to do?

[Defendant]: I can't speak alone with you?

THE COURT: No. You can speak -- by law, it has to be interpreter, attorneys, court reporter. You can't speak to me directly.

[Defendant]: Well, right now I'm not even afraid.

THE COURT: You're not -- do you -- let's get to the issue. Do you want to have the trial to me today?

[Defendant]: Well, we're here.

THE COURT: Well, to have the trial you need to say and write down you do not want the jury.

8

[Defendant]: And that's by law? By law?

THE COURT: By law. To protect your rights.

[Defendant]: Oh, okay.

THE COURT: Here's the jury waiver. If you want to sign it, [defense attorney] will explain it to you.

[Defendant]: Well, you're putting the lasso to my neck.

THE COURT: No, I'm not going to let you sign it under those circumstances. It has to be something you wish to do freely and voluntarily.

[Defendant]: How do you say?

THE COURT: Freely and voluntarily.

[Defendant]: What, signing?

THE COURT: Signing the jury waiver.

[Defendant]: Well, can't you judge me without signing the paper?

THE COURT: I cannot under our law. The jury would have to do it.

[Defendant]: Can I turn and look back?

THE COURT: Sure.

The record then indicates a pause in the proceedings, and an unrecorded bench conference. The discussion resumes in the same vein as above, the trial court continuing to explain that the decision to be tried by the court or a jury was strictly Renteria's decision and that a written waiver of trial by jury had to be signed by Renteria if he wanted a bench trial. Renteria asked several times if he could speak alone to the trial judge, who apparently sensed Renteria might seek to discuss specific aspects of the pending cases. The court explained that such would not be in Renteria's interest,

9

with the prosecutor in the room, and told Renteria he would allow him to testify under oath at the appropriate time in trial. Finally, Renteria signed the waiver.

A written waiver of jury trial was executed, and the record supports a reasonable inference the waiver was executed with the consent of the trial court and the State, thus complying with the applicable Texas law. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13. "[A]s a matter of federal constitutional law, the State must establish through the trial record an express, knowing, and intelligent waiver of jury trial by a defendant." *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984).

Renteria broadly, and in a conclusory manner, asserts[3] that the jury waiver was not voluntarily, intelligently, and knowingly made. The record does not support that claim. Allowing for the translation of the discussion among the participants, we find that Renteria was aware he was giving up a right to be tried by twelve individuals and choosing to be tried solely by the court. Renteria may have been initially confused about the requirement that he execute a writing documenting the decision. That does not establish that he was unaware of the significance of the

---

[3]The extent of Renteria's appellate argument on the jury waiver is as follows: "The argument in the case at bar that the Appellant did not make a voluntary, knowing, intelligent waiver of his right to trial is simply abundantly clear from the record." He then cites to a ten-page section of the reporter's record, large swaths of which we have quoted above. This is not an argument supported by legal authorities as required by the Rules of Appellate Procedure. "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). In the interest of justice, however, we address the issue.

actual waiver. Renteria's statements to the trial court amply support the court's finding that Renteria understood the difference in trial procedure and wished to be tried by the court, not a jury.

We overrule this point of error.

*(2)*　　*A Formal Competency Hearing Was Not Required on this Record*

Renteria also complains that the trial court did not conduct a hearing into Renteria's competency to stand trial. Renteria argues that, once the trial court *sua sponte* ordered an examination by a psychologist, the court was then obligated to hold a competency hearing. We disagree.

At the first hearing, which addressed counsel's motion to withdraw, a letter from Renteria to the trial court was summarized by the court's interpreter. And, as we have noted, among other things, Renteria was quoted as calling his attorney a witch.[4] After the translator's summary, Renteria addressed the court and referred to the laboratory analyzing the State's evidence— presumably the DNA evidence ultimately used to prove Renteria fathered a child with his great-niece. Renteria mentioned potential witnesses, or at least people with whom he had discussed his case. It was at this point that the trial court ordered a competency examination: "First thing I'm concerned about is whether you're able to communicate with your attorney and assist him in preparing your case for trial and whether you understand these proceedings, so I'm going to order

---

[4]Renteria's briefing actually points to no specific instances of conduct which would prompt the trial court to inquire into competency. The brief says Renteria's "basically nonsensical ramblings brought to the trial court's attention that the issue of competency existed" and cites two two-page excerpts from the hearing on counsel's motion to withdraw.

that you are to be examined by a mental health professional, a psychologist . . . ." The matter of competency was raised *sua sponte* by the trial court exclusively.

Per the court's instructions, Renteria was examined, in the presence of the interpreter, by a psychologist, who found no indications of incompetency or inability to communicate with his attorney.[5] The examining psychologist found Renteria competent to stand trial. Observing that counsel or the interpreter may have been "concerned about what appeared to be a bizarre mentation"—presumably from the letter naming his attorney a "witch"—the report noted no observable hallucinations during Renteria's examination. Rather, the "letter possibly indicated magical thinking and religious delusions and auditory hallucinations." During the examination, the psychologist observed "some magical thinking, but it appeared . . . to be cultural and not related to mental illness. For example, the defendant believes he heard God's voice tell him to move cells, because other inmates had found out his charge and he feared assault by them."

When next the court convened, there was no discussion of the psychological examination, subsequent report, or competency. Renteria's brief claims that, at the next hearing, where the waiver of jury trial was discussed and resolved, before trial was held, statements by Renteria "clearly indicate a bona fide[6] issue of competency of the Appellant regarding the jury waiver" and that Renteria "simply did not make any sense regarding the jury waiver issue-which indicated

---

[5]While the report observed Renteria's lack of familiarity with the legal process in which he was involved, it found him able to relate to his attorney.

[6]*See Pate v. Robinson*, 383 U.S. 375, 385 (1966).

12

he was not competent."  We have discussed and quoted at length the discussions between the trial court and Renteria on waiver of jury trial.

Contrary to Renteria's conclusory and unsupported assertion that the matter of competency was raised, we find no error in the trial court's not holding a competency hearing.  The trial court was free to order the examination by a psychologist, who concluded that Renteria was indeed competent to stand trial.  Further, when the salient portions of the record are read in context, we find nothing suggesting "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant."  *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003).  At most, the trial court cautiously conducted an "informal inquiry" into Renteria's competency.  Based on the psychologist's report, the trial court presumably and reasonably found no evidence to support a finding of incompetency and thus was not obligated to conduct a hearing.  Renteria has posited no authority or argument suggesting otherwise.

In *Moore v. State*, 999 S.W.2d 385 (Tex. Crim. App. 1999),[7] Moore's attorney made reference to unspecified communication difficulties; the Texas Court of Criminal Appeals found that, while Moore may have exhibited "unruly and disruptive courtroom demeanor," such was not probative of incompetence to stand trial.  *Id.* at 395.  While the court had ordered an examination of Moore,[8] there was no error in not conducting a competency hearing where the "record

---

[7]*Moore*, like the instant case, was tried before Article 46B.004 was amended in 2011 by language lowering the threshold to the requirement that an informal inquiry be made into a defendant's competency.  *See* Act of May 24, 2011, 82d Leg., R.S., ch. 822, §§ 2, 21(b), 2011 Tex. Gen. Laws 1894, 1894, 1901.

[8]At a pretrial hearing, the court ordered an examination, but that doctor's report either was not filed or completed, and he was never called to testify or appear before the trial court.  When Moore announced his intention to present a defense of insanity, the court appointed another doctor, who evaluated Moore and concluded he was sane at the time

13

support[ed] the trial judge's conclusion that there was no *bona fide* doubt as to appellant's competency to stand trial." *Id*. at 397.[9]

The case before us is similar to *Moore* in that nothing established any lack of competency after the trial court's initial informal inquiry. Given the confirming report of competency from the court-appointed expert, there was no obligation to conduct a competency hearing.

We affirm the trial court's judgment.

                                         Josh R. Morriss, III
                                         Chief Justice

Date Submitted:      December 7, 2015
Date Decided:        December 30, 2015

Do Not Publish

---

of the murder and competent to stand trial. *Moore*, 999 S.W.2d at 393. *Moore* involved the defendant's decision to represent himself after waiving his right to representation by counsel.

[9]Renteria cites several cases for his argument that the trial court must conduct a competency hearing after ordering examination of a defendant. In *Carpenter v. State*, 507 S.W.2d 794 (Tex. Crim. App. 1974), it is true the court found error in the trial court's failure to submit competency to the jury, but there the trial court "clear[ly] found" an issue of competency to exist. *Id.* at 795. Here, the trial court found no issue on competency, but rather, out of caution, conducted the informal inquiry. In *Ex parte Hagans*, there was substantial evidence raising a bona fide doubt as to Hagans' competency, and the trial court erred to submit the defense of insanity to the jury along with the general charge. *Ex parte Hagans*, 558 S.W.2d 457, 463 (Tex. Crim. App. 1977). In *Townsend v. State*, 427 S.W.2d 55 (Tex. Crim. App. 1968), a psychiatrist examined Townsend and found him "presently insane"; the trial court erred in not submitting the independent issue of competency to the jury. *Id.*at 58, 63. In *Fuller v. State*, 253 S.W.3d 220 (Tex. Crim. App. 2008), it was held that the evidence did not raise a bona fide doubt as to the defendant's competency and the trial court did not err in failing to order an evaluation. We find no support for Renteria's argument.