**Affirmed as modified; Opinion Filed August 21, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00639-CR

### JOEL ERCEDES VILLATORO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-75768-T**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Myers, and Justice Carlyle
Opinion by Justice Myers

Appellant Joel Ercedes Villatoro was convicted following a trial before the court of aggravated sexual assault of a child under the age of fourteen, and sentenced to ten years' imprisonment. In three issues, appellant raises ineffective assistance of counsel, sufficiency of the evidence, and that his waiver of a jury trial was not knowing and voluntary. As modified, we affirm.

### BACKGROUND AND PROCEDURAL HISTORY

The evidence at trial showed that the offense location was a four bedroom house in the Pleasant Grove area of Dallas County that belonged to Dominga Romero, a friend of the complainant's mother, Iris. The complainant, fourteen years old on the day that he testified, and his sister, who was one year younger, would sometimes stay there while their mother was at work. Dominga lived in that house with her husband (Fernando), an elderly aunt, a baby girl, and her two

sons, Jose and appellant.

The complainant described the layout of the house and drew a floorplan. He testified that he was in appellant's bedroom when the assault occurred and that appellant, who he referred to as "Joel," told him to put his mouth on appellant's "dick." The complainant also testified:

Q: But we skipped a little bit there, [complainant]. You said that he put his dick in your mouth. Did that happen?

A: Yeah, it did happen.

The complainant testified that this happened "five or, like, like four years ago" when he was in the sixth or seventh grade, and that he was eleven in the sixth grade and twelve in the seventh grade. When asked, "So it was a while ago?" The complainant replied, "Yeah, a while ago." The complainant indicated by pointing to a diagram of an unclothed boy that he meant the male sexual organ when he was used the word "dick." The complainant said that the abuse occurred in 2015, and he later testified as follows

Q. Okay. Now, [complainant], are you a hundred percent sure that it happened in 2015, or do you know exactly when it happened?

A. 100—100 percent.

Q. You're 100 percent 2015 [sic], right?

A. Yeah.

Q. Why do you say you're 100 percent?

A. Everybody thinks I'm lying, but, like, I'm—I wasn't lying. I'm just—just saying the truth.

The complainant also provided the following details regarding the offense:

Q: Now, [complainant], specifically what part of Joel's body touched your mouth?

A: So nasty.

Q: So nasty. But what part?

A: On the dick.

Q: Okay. And when it touched your mouth, did it just touch it or did it go inside

your mouth?

A: Inside my mouth.

Q: Okay. And do you remember how it tasted?

A: Bad.

Q: Why do you say bad?

A: So disgusting, like, you know how, like, you can taste, like pee.

Q. Okay.

A. I don't like that.

Q. Do you know about how long his dick was in your mouth?

A. Like—just, like, one—like, ten minutes.

Q. One, like, ten minutes?

A. Yeah.

Later, when the trial court questioned the complainant, the complainant testified that appellant unzipped his pants and pulled out his penis. The complainant then testified as follows:

THE COURT: Okay. All right. And then when he pulled it out, what happened next?

THE WITNESS: He told me to put my mouth on his dick.

THE COURT: Okay. And did you do that?

THE WITNESS: Yeah, I did that. And I should not do it at all.

The evidence showed that appellant was an adult when these events took place.

The complainant's sister testified that she first learned her brother had been abused one day when they were both at home. Her brother entered her bedroom and she noticed he was nervous, and that he was mumbling and continuing to repeat her name. She asked him why he was so nervous, and the complainant told her what had happened. She said to her brother, "Well, one day he will pay for it." The complainant's sister testified that she "got mad and went directly to where my mom was to tell her what had happened."

Iris testified that the complainant had been diagnosed with autism when he was three years old, and that he had received "quite a bit" of therapy to help him with his condition. She testified that she learned about the abuse in 2015, when she was cleaning an apartment. Iris's daughter entered the room and said, "Mom, mom, the same thing that was done to me happened to my brother." Iris recalled that she was so surprised to hear this that she dropped the glass of water she was holding. Iris testified that her daughter had been receiving therapy at the Dallas County Children's Advocacy Center (DCAC) to deal with the effects of abuse she had suffered. Iris said that she was shocked to learn her autistic son, too, had been abused.

Iris talked to her son and asked him about what she had heard. The complainant said, "It wasn't my idea. It was Joel's idea," and he told her that appellant had put his private part "in my mouth." Iris said she was so shocked that, at first, she could not say a word. She said that she tried to get additional details from the complainant, but "[h]e just kept repeating that it had been Joel's idea."

Yesenia Gonzalez, a forensic interviewer with the DCAC, testified that she interviewed the complainant in November of 2015, when he was twelve years old. She testified that the complainant knew why he was there, that his answers were straightforward, and he was willing to talk to her. He told her "that Joel had made sex with him," and that he had made the complainant put his mouth on appellant's penis. Gonzalez testified that the complainant kept reiterating over and over that it was not his idea. She asked him to describe appellant's penis, and he said "[i]t was large." She asked him what color it was, and "[h]e said it was pink." The complainant told her that the incident had occurred in appellant's bedroom and that, after it was over, appellant pulled his clothes back up and told the complainant to leave the room. The complainant initially said he was ten years old when this took place, and that he was in the fifth grade. But he also gave a series of different answers, saying it had occurred in 2000; that it took place in 2015; and then that it

–4–

occurred in 2014. He said that he was assaulted at appellant's home and that they were both standing when it occurred. He described the taste of appellant's penis, saying it was "like nasty" or that it "had germs." Gonzalez testified that she asked the complainant "like three or four different ways if there was anybody else who had done that, anybody else who had done sex on him," and he kept saying, "No, no, no, just Joel." Gonzalez further testified that the complainant said he had not been exposed to pornography or anything of that nature.

The trial court ultimately found appellant guilty of aggravated sexual assault of a child. Following additional punishment-related evidence, the trial court sentenced appellant to ten years' imprisonment. Appellant filed a motion for new trial that argued the verdict was contrary to the law and the evidence, which the trial court overruled without a hearing. This appeal followed.

## DISCUSSION

## I. Ineffective Assistance of Counsel

In his first issue, appellant argues that he received ineffective assistance of counsel because trial counsel (1) failed to object to the complainant's competency to testify; (2) failed to object to the trial court's implicit finding of competency; (3) did not present mitigating evidence at punishment; and (4) did not request a presentence investigation report (PSI).

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of

–5–

reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, "[i]f trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava*, 415 S.W.3d at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

In this case, appellant did not raise the issue of ineffective assistance of counsel in his motion for new trial, and the record is, accordingly, silent regarding defense counsel's reasons for his actions. Beginning with the question of the complainant's competency to testify, the record does show that, when the complainant testified, the State asked him to spell his name, which he could not do. He was able to confirm the proper spelling of his first and last names. The trial court then interrupted the State and questioned the complainant sua sponte:

> THE COURT: [complainant]—do you go by [complainant's first name] or [complainant's middle name]?
>
> THE WITNESS: Just call me [complainant's first name].

THE COURT: Okay. [complainant], I'm going to ask you a few questions; okay? And if you don't understand my question, will you let me know?

THE WITNESS: Yes.

THE COURT: Okay. Thank you, [complainant]. I'm Judge Francis. And I want to make sure you understand why you're here today. All right?

THE WITNESS: All right.

THE COURT: How old are you, [complainant]?

THE WITNESSS: Fourteen.

THE COURT: And what grade are you in?

THE WITNESS: Freshman.

THE COURT: Freshman. Where do you go to high school?

THE WITNESS: Mesquite High School.

THE COURT: Okay. Great. So let me ask you this, [complainant]: You had a chance to talk to [counsel for the State], right?

THE WITNESS: Yes.

THE COURT: Okay. Now, do you know the difference between a truth and a lie?

THE WITNESS: Uh-huh.

THE COURT: Is that a "yes"?

THE WITNESS: Yes.

THE COURT: Okay. If I said your shirt was red, would that be true or false?

THE WITNESS: False.

THE COURT: Right. Because what color is your shirt?

THE WITNESS: Blue.

THE COURT: Blue, right. And let me ask you this, [complainant]: If you—what happens to you if you tell your mom a lie?

THE WITNESS: You get in trouble.

THE COURT: Okay. What does she usually—what does she usually do if you get in trouble?

THE WITNESS: I don't really remember. I don't even know.

THE COURT: Okay. All right. Now, do you have any questions for me, [complainant], before we get started?

THE WITNESS: No.

THE COURT: All right. Okay. The Court is satisfied.

In response to further questions from the State, the complainant explained that he likes to draw. He testified that he likes the rap artist Drake and that his favorite Drake song is "God's Plan." He answered questions about his favorite video games, named specific video games he liked, and, when asked whether he liked the PlayStation or X-box more, said he preferred the PlayStation and then gave reasons for his preference. At the State's request, the complainant drew a floorplan of the offense location, correctly spelled the names of the rooms in the house, and correctly spelled his first name in the top left corner of the diagram.

Arguing that the complainant was not competent to testify, appellant has compiled a table in his brief that allegedly shows the complainant's sometimes confusing and/or nonresponsive answers, and appellant asserts that review of the complainant's testimony shows he was not competent to testify. But when, as in this case, an ineffective assistance of counsel claim involves error preservation, the appellant must show he would likely have been successful on appeal had counsel preserved error. *See Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013) ("[T]o demonstrate harm in this case, Applicant must show that he would likely have been successful on appeal had the issue been properly preserved, that is, that the trial court's denial of Applicant's motion to suppress was an abuse of discretion."). Our standard for reviewing a trial court's determination of whether a child witness was competent to testify is abuse of discretion. *See Baldit v. State*, 522 S.W.3d 753, 761 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In our present context, this means appellant would have to show from the record that the trial court abused its discretion in implicitly finding the complainant was competent to testify. *See Moore*, 395 S.W.3d

at 158; *Baldit*, 522 S.W.3d at 761. Appellant, however, has made no such showing.

Generally, every person is presumed competent to testify. *See* TEX. R. EVID. 601(a); *Baldit*, 522 S.W.3d at 761; *Hogan v. State*, 440 S.W.3d 211, 213 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). A child or any other person is not competent to testify if, after examination by the court, the court finds the person "lacks sufficient intellect to testify concerning the matters in issue." TEX. R. EVID. 601(a)(2). A trial court is not required to conduct a sua sponte preliminary competency examination of a child witness. *Baldit*, 522 S.W.3d at 761. Instead, the party seeking to exclude the witness must raise the issue. *Id.* When a party challenges the competency of a child witness, the court will consider whether the witness possesses (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Id. See also Hogan*, 440 S.W.3d at 213–14. The third element involves the ability to understand the moral responsibility to tell the truth, to understand the questions posed, and to frame intelligent answers. *Baldit*, 522 S.W.3d at 761. A child witness need not understand the obligation of the oath, but the trial court must impress the child with the duty to be truthful. *Id.* There is no precise age under which a child is deemed incompetent to testify. *Id.* Moreover, "[i]f a person afflicted with a physical or mental disability possesses sufficient intelligence to receive correct impressions of events he sees, retains clear recollection of them and is able to communicate them through some means there is no reason for rejecting his testimony." *Watson v. State*, 596 S.W.2d 867, 870–71 (Tex. Crim. App. [Panel Op.] 1980); *see also Hogan*, 440 S.W.3d at 214.

Although it was under no obligation to do so, the trial court took the proactive step of assessing the complainant's competency, and it sua sponte questioned the complainant. The complainant responded to the court's questions and showed he understood the difference between the truth and a lie, and that he would get into trouble if he told a lie. A witness is not rendered

–9–

incompetent merely because his answers are sometimes confusing, inconsistent, nonresponsive, or contradictory. *See Hogan*, 440 S.W.3d at 214–17. Because there has been no showing the trial court abused its discretion in being "satisfied" with the complainant's answers to its questions, appellant has not shown that trial counsel's failure to object prejudiced him. Therefore, appellant has failed to show ineffective assistance of counsel. *See Williams*, 301 S.W.3d at 687 (appellant's failure to satisfy one prong of *Strickland* test negates court's need to consider other prong).

Turning to the question of counsel's failure to present mitigating evidence at punishment, the record shows that after the State offered punishment evidence of appellant's prior convictions,[1] the trial court asked defense counsel if he had any testimony to offer. Trial counsel stated that he wanted to call Dominga Romero, appellant's mother, to the stand, but the interpreter she needed was gone. Trial counsel asked if Romero's other son could interpret, and the trial court conferred with the parties off of the record, after which trial counsel rested. The trial court stated:

> All right. I will take into consideration, though, that his mother is here and his brother is here. And I know what they'd say. And we heard testimony about Mr. Villatoro's past issues, and I've taken that into consideration also.

The trial court then sentenced appellant to ten years' imprisonment.

Appellant points to the fact that trial counsel did not request a PSI as support for his contention that trial counsel was ineffective for failing to present any mitigating evidence at punishment. Appellant argues that had trial counsel engaged in any semblance of an investigation "as to mitigating evidence, trial counsel would have uncovered testimony from Appellant's friends and family that would have provided the trial court with information regarding Appellant's upbringing and good reputation in the community." Appellant further argues that "[t]hese factors could have outweighed Appellant's criminal record and provided mitigation from the facts of the

---

[1] The State's exhibits showed that appellant had two prior misdemeanor convictions for burglary of a vehicle and a felony conviction for burglary of a habitation.

–10–

present case." Appellant, however, has not shown what other mitigating evidence existed (if any), and we are not inclined to speculate.

> If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence. Ineffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.' That record must itself affirmatively demonstrate the alleged ineffectiveness.

*Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999)).

The record in this case shows only that trial counsel wanted to call appellant's mother to the stand. The interpreter was not available, and trial counsel asked if Romero's other son could interpret. The trial court conferred with the parties off of the record, and trial counsel rested. Even so, the record also reflects that the court considered that appellant's "mother is here and his brother is here," and that the court knew what they would say. Furthermore, the minimum punishment appellant faced in this case was five years, *see* TEX. PENAL CODE ANN. §§ 12.32(a), 22.021(e), and the court's ten-year sentence was five years less than the State's plea offer of fifteen years.[2]

We conclude appellant has failed to rebut the strong presumption of reasonable assistance because without an explanation for trial counsel's decisions, the complained-of conduct simply does not compel a conclusion that trial counsel's performance was deficient. Based on this record, we cannot say no reasonable trial strategy could justify counsel's decision to engage in the complained-of conduct. *See Lopez*, 343 S.W.3d at 143. Nor can we conclude counsel's conduct was so outrageous no competent attorney would have engaged in it. *See Nava*, 415 S.W.3d at 308. Moreover, even if we assume counsel was ineffective, appellant has not shown harm. To establish prejudice in such a context, appellant would have to show that, had counsel requested a PSI or presented unspecified mitigating evidence at punishment, a reasonable probability exists that the

---

[2] The State's fifteen-year plea offer is also discussed in appellant's third issue.

court would have imposed a lower sentence. But given the facts of this case and the trial court's broad discretion in assessing punishment, appellant cannot show that, but for the complained-of conduct, he would have received a lesser punishment. We overrule appellant's first issue.

## II. Sufficiency of the Evidence

In his second issue, appellant contends the evidence is insufficient to support the conviction. He argues that "[t]he evidence at trial was both legally and factually insufficient to support the verdict of guilty for the charged offense of aggravated sexual assault of a child." Because the factual sufficiency standard for a review of evidence to support a conviction is no longer available in Texas, *see, e.g., Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd), we address only the legal sufficiency of the evidence.

The standard a reviewing court applies in determining whether the evidence is sufficient to support each element of a criminal offense the State was required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

The indictment alleged that on or about November 5, 2015, in Dallas County, Texas appellant:

> [D]id unlawfully then and there intentionally and knowingly cause the contact and penetration of the mouth of [the complainant], a child, who was not then the spouse of defendant, by an object, to-wit: the sexual organ of defendant, and at the time of the offense, the child was younger than fourteen years of age[.]"

To obtain a conviction for aggravated sexual assault of a child under the age of fourteen, the State had to prove beyond a reasonable doubt appellant intentionally or knowingly caused the

–12–

contact or penetration of the complainant's mouth by the sexual organ of appellant, and the complainant was under fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) & (a)(2)(B). The testimony of a child complainant alone is sufficient to support a conviction for aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). The complainant's description of what happened to him need not be precise, nor is he expected to express himself at the same level of sophistication as an adult. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.); *see also Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd). The child complainant's testimony is liberally construed and, "as long as the child communicates to the factfinder that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient." *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The State is not required to produce corroborating medical or physical evidence. *See Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Cantu v. State*, 366 S.W.3d 771, 776 (Tex. App.—Amarillo 2012, no pet.); *Hiatt*, 319 S.W.3d at 121–22. The lack of physical or forensic evidence is a factor for the trier of fact to consider in weighing the evidence. *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *affirmed*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

As part of his argument that the evidence is insufficient, appellant poses a series of questions, which phrases as follows:

- ☐ "Who was at the house the day the alleged offense occurred?"
- ☐ "Why was [the complainant] in Appellant's room?"
- ☐ "How long was [the complainant] in Appellant's room?"
- ☐ "Was the door to Appellant's room open or closed?"
- ☐ "What happened when [the complainant] left the room?"

–13–

"When did the alleged offense occur?"

There is, however, sufficient evidence in this record to support the trial court's determination that appellant was guilty of the offense of aggravated sexual assault of a child. The complainant—fourteen years old when he testified in 2018—testified that appellant told him to put his mouth on appellant's "dick" (as the complainant indicated on a diagram, the male sexual organ), and the complainant was one hundred percent sure this occurred in 2015. Appellant raises other issues—i.e., discrepancies regarding where the outcry occurred, when it took place, and that the complainant's outcry followed an outcry from his sister regarding abuse she had suffered. Yet, like the questions appellant has raised, these weight and credibility-related issues were well within the purview of the trier of fact. Appellant also challenges the competency of the complainant, but we addressed this subject when we discussed appellant's ineffective assistance of counsel claims, and we need not do so again. We conclude the evidence is legally sufficient to support the conviction, and we overrule appellant's second issue.

### III. Waiver of Right to a Jury Trial

In his third issue, appellant argues that his waiver of his right to a jury trial was not knowing and voluntary. Appellant contends he did not voluntarily waive his right to a jury trial because the trial court did not adequately admonish him.

A defendant has an absolute right to a jury trial. *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009); *see also* U.S. CONST. amend. VI. A defendant may, however, waive this right and instead have a bench trial. *See Hobbs*, 298 S.W.3d at 197. Article 1.13(a) of the code of criminal procedure provides:

> The defendant in a criminal prosecution for any offense other than a capital felony . . . shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that . . . the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney

representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea.

TEX. CODE CRIM. PROC. ANN. art. 1.13(a). When a defendant challenges a jury trial waiver on appeal, the State must establish through the trial record an express, knowing, and intelligent waiver of that right. *Hobbs*, 298 S.W.3d at 197 (citing *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984) (en banc)); *Smith v. State*, 363 S.W.3d 761, 767 (Tex. App.—Austin 2012, pet. ref'd). A written jury waiver that complies with article 1.13 is sufficient to show that a defendant intelligently waived his right to a jury trial. *See Holcomb v. State*, 696 S.W.2d 190, 195 (Tex. App.—Houston [1st Dist.] 1985), *aff'd as reformed*, 745 S.W.2d 903 (Tex. Crim. App. 1988) (en banc); *Jackson v. State*, Nos. 05–14–00274–CR & 05–14–00275–CR, 2015 WL 3797806, at *6 (Tex. App.—Dallas June 17, 2015, no pet.) (mem. op., not designated for publication).

The record in this case shows that on March 2, 2018, the trial court admonished appellant in part that he had the right to a jury trial and that "the jury could assess anything from five to 99 years or life" imprisonment. The trial court told appellant that it was the court's understanding appellant was going to reject the State's plea offer of fifteen years, and asked if this was correct. Appellant replied, "Yes, ma'am." The court then asked, "You want to take this forward with the jury trial?" Appellant answered, "Yes, ma'am."

Appellant subsequently executed a written "waiver of jury" form that was approved and signed by defense counsel, the attorney for the State, and the trial court. The form recited that appellant appeared in open court and waived his right to a trial by jury, and it requested that the court consent to and accept the waiver of the right to a trial by jury. The form was filed with the trial court on May 17, 2018.

On May 21, 2018, prior to the trial of this case before the court, the trial court questioned appellant as follows:

THE COURT: All right. Mr. Villatoro, we spoke on March 2nd of 2018, and at

–15–

that time you rejected the State's offer of 15 years. And we were set for jury trial this morning. However, you have signed a waiver indicating that you will let this Court hear the case and that you're going to give up your right to a jury trial. Is that right?

APPELLANT: Yes ma'am.

THE COURT. All right. Is there anything else, [defense counsel] or Mr. Villatoro, you need to ask this Court before we get started?

[DEFENSE COUNSEL]: No, Judge.

Appellant argues the trial court did not ascertain that the waiver was knowing, voluntary and intelligent. Appellant claims there is no evidence he understood that the waiver applied to all issues that might otherwise need to be determined by a jury, "including those issues requiring factual findings at sentencing;" that a jury would need to be unanimous whereas in a bench trial, the trial court would determine the verdict; and that it was appellant's choice alone to waive a jury.

There is, however, no indication in this record appellant did not knowingly and voluntarily waive his right to a jury trial. Appellant executed a written waiver. The trial court asked appellant about this waiver prior to the start of the bench trial and then questioned appellant, determining that he did, in fact, wish to proceed with a trial before the court. Appellant does not argue that the waiver form did not comply with article 1.13, and the written waiver alone is sufficient to demonstrate appellant waived a jury trial. Considered alongside the admonishments in the record, it shows appellant knowingly and voluntarily waived his right to a jury trial. We overrule appellant's third issue.

### IV. State's Cross-Issues

The State brings three cross-issues seeking modifications of the judgment in this case to add that the sex offender registration requirements apply, the age of the complainant, and the correct name of the attorney who represented the State.

The judgment incorrectly states that the "Sex Offender Registration Requirements do not apply to the Defendant," and it states "N/A" for the age of the victim at the time of the offense.

–16–

Appellant's conviction for aggravated sexual assault of a child under the age of fourteen is defined as a "[r]eportable conviction or adjudication" for purposes of the sex offender registration statute. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A). As a person who has a reportable conviction or adjudication, appellant is subject to the registration requirements. *See id*. art. 62.051.

As alleged in the indictment and proven in this case, the victim was younger than fourteen years of age at the time of the offense. Because there is sufficient evidence to support the conviction, and because the offense required a showing that the age of the victim was younger than fourteen, we sustain the State's first and second cross-issues and modify the judgment to show that the sex offender registration requirement applies, and that the age of the victim at the time of the offense was younger than fourteen years of age. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd); *see also Lourenco v. State*, Nos. 05–13–01092–CR & 05–13–01114–CR, 2015 WL 356429, *10 (Tex. App.—Dallas Jan. 28, 2015, no pet.) (mem. op., not designated for publication) (modifying judgments to show applicability of sex offender registration requirements because evidence was sufficient to support convictions); *Ruiz v. State*, Nos. 05–12–01703–CR & 05–12–01704–CR, 2014 WL 2993820, at *12 (Tex. App.—Dallas June 30, 2014, no pet.) (mem. op., not designated for publication) (same).

The State also points out that the judgment incorrectly names "Patrice Capetillo" as the attorney for the State when, in fact, the attorney who represented the State was "Patrick Capetillo." Accordingly, we sustain the State's third cross-issue and modify the judgment to show that the name of the attorney who represented the State was Patrick Capetillo.

As modified, the trial court's judgment is affirmed.

/Lana Myers/
LANA MYERS
JUSTICE

Do not publish
TEX. R. APP. P. 47.2(b)
180639F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOEL ERCEDES VILLATORO, Appellant

No. 05-18-00639-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-75768-T.
Opinion delivered by Justice Myers. Chief Justice Burns and Justice Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was N/A" should be changed to "The age of the victim at the time of the offense was younger than 14 years of age"

The portion of the judgment entitled "Attorney for State" is modified to show "Patrick Capetillo."

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 21st day of August, 2019.